LEE LEWIS CONSTRUCTION,
INC., Petitioner,

v.

Norma HARRISON, individually and as
next friend of Sumer Dawn Harrison
and Jimmie Thor Harrison, minors,
and Sellie E. Harrison and May Harri-
son, Respondents.

No. 99–0793.

Supreme Court of Texas.

Argued April 5, 2000.

Decided Dec. 20, 2001.

Rehearing Overruled April 15, 2002.

Michelle E. Robberson, R. Brent Cooper, Cooper & Scully, Dallas, Robert L. Craig, Jr., Hugh N. Lyle, Eric Gordon Walraven, Craig Terrill & Hale, Lubbock, for petitioner.

Joe L. Lovell, Lovell Lovell & Newsom, Amarillo, Carl V. Crow, Law Office of Carl V. Crow, Richard N. Countiss, Law Office of Richard N. Countiss, Kevin H. Dubose, David M. Gunn, Hogan Dubose & Townsend, L.L.P., Houston, Jonette M. Walker, David Hazlewood, Hazlewood & Hazlewood, for Lubbock, for respondents.

Justice HANKINSON delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice BAKER, Justice O'NEILL, and Justice RODRIGUEZ joined.

Following Jimmy Harrison's fatal fall from the tenth story of a construction site where Lee Lewis Construction, Inc., (LLC) was the general contractor, the Harrison family brought a wrongful death

and survival action against LLC, alleging negligence and gross negligence. The trial court rendered judgment on the jury's verdict against LLC and awarded $7.9 million in compensatory damages plus prejudgment interest and $5 million in punitive damages. LLC appealed. The court of appeals affirmed, after suggesting remittitur of $450,000 for unproven pain and suffering damages. 64 S.W.3d 1. LLC now challenges the legal sufficiency of the jury's negligence and gross-negligence findings, and in the alternative, the propriety of the submitted jury question concerning whether LLC owed a duty to Jimmy Harrison. We conclude there is legally sufficient evidence that: (1) LLC retained the right to control its subcontractor's fall-protection measures and thus owed a legal duty to Harrison; (2) LLC's failure to ensure adequate fall-protection measures proximately caused Harrison's fall; and (3) LLC was grossly negligent. We also conclude that any charge error was harmless. Accordingly, we affirm the court of appeals' judgment.

Lubbock's Methodist Hospital hired LLC to remodel the eighth floor of, and add ninth and tenth floors to, its south hospital tower. As the general contractor, LLC then subcontracted the project's interior glass-glazing work to KK Glass. Jimmy Harrison was an employee of KK Glass. Harrison was installing thermal insulation and caulking between the window frames on the tower's tenth floor when he fell and suffered fatal injuries. Although no one witnessed Harrison's fall, and although there is disputed evidence about what type of safety device he was using, the evidence is undisputed that Harrison was not using an independent lifeline that would have stopped his fall.

Harrison's wife, two children, and parents sued LLC, alleging negligence and gross negligence, and also sued KK Glass, alleging gross negligence. The Harrisons settled with KK Glass but tried their case against LLC to a jury. The jury rendered a verdict for the Harrisons, finding that LLC had retained the right to control safety at the construction site, that LLC was both negligent and grossly negligent, that LLC was ninety percent responsible for the accident and Harrison was ten percent responsible, and awarded the Harrisons compensatory and punitive damages. LLC appealed. After the Harrisons agreed to remit $450,000 of the damages awarded to the estate for Jimmy Harrison's pain and suffering, the court of appeals affirmed. 64 S.W.3d at 1. We granted LLC's petition for review to determine whether there is legally sufficient evidence of LLC's negligence and gross negligence, and in the alternative, if the first jury question was erroneous.

▬▬ We begin with LLC's no-evidence challenge to the jury's negligence finding. To sustain a negligence action, the plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach. *Praesel v. Johnson,* 967 S.W.2d 391, 394 (Tex.1998). LLC challenges the duty and proximate-cause elements of the jury's verdict, but not the breach or damages elements. In conducting a legal-sufficiency review, we review the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *Lozano v. Lozano,* 52 S.W.3d 141, 166 (Tex.2001) (Baker, J., concurring in part and dissenting in part). If more than a scintilla of evidence exists, it is legally sufficient. *Id.* More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclu-

sions by reasonable minds about a vital fact's existence. *Id.*

 Our review of the evidence concerning negligence begins with duty. The parties agree that the duty in this case is governed by our well-established law concerning a general contractor's duties to a subcontractor's employees. Ordinarily, a general contractor does not owe a duty to ensure that an independent contractor performs its work in a safe manner. *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 803 (Tex.1999); *Hoechst–Celanese Corp. v. Mendez,* 967 S.W.2d 354, 356 (Tex.1998). A duty does arise, however, if the general contractor retains some control over the manner in which the independent contractor performs its work. *Elliott–Williams,* 9 S.W.3d at 803. The general contractor's duty of care is commensurate with the control it retains over the independent contractor's work. *Id.; Mendez,* 967 S.W.2d at 355. Section 414 of the *Restatement (Second) of Torts,* which we adopted in *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985), further explains this principle:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414 (1965). Under our decision in *Redinger,* a general contractor may owe a duty of reasonable care to a subcontractor's employee, and consequently may be liable for injury to that employee, if the general contractor retains control over part of the work to be performed: "[W]hen the general contractor exercises some control over a subcontractor's work he may be liable un-

less he exercises reasonable care in supervising the subcontractor's activity." 689 S.W.2d at 418.

 A general contractor can retain the right to control an aspect of an independent contractor's work or project so as to give rise to a duty of care to that independent contractor's employees in two ways: by contract or by actual exercise of control. *See, e.g., Koch Ref. Co. v. Chapa,* 11 S.W.3d 153, 155 (Tex.1999); *Coastal Marine Serv. of Tex., Inc. v. Lawrence,* 988 S.W.2d 223, 226 (Tex.1999). We have frequently used the phrases "right of control" or "retained control" interchangeably. *See Chapa,* 11 S.W.3d at 155; *Lawrence,* 988 S.W.2d at 226. The distinction remains important, however, because determining what a contract says is generally a question of law for the court, while determining whether someone exercised actual control is a generally a question of fact for the jury. LLC challenges only the legal sufficiency of the evidence to support the jury's finding that it retained the right to control safety on the jobsite and the court of appeals' interpretation of the contracts at issue; it does not challenge the application of section 414 or argue for a change in Texas law. We therefore review the evidence in support of the jury's finding in accordance with that law.

 Here, the trial court asked the jury, "Did LLC retain the right to control safety" on the jobsite. Thus to evaluate LLC's no-evidence challenge we must determine if the Harrisons presented more than a scintilla of evidence that LLC exercised actual control over safety, in particular, the fall-protection systems used by KK Glass employees. LLC argues there is no evidence that it exercised any actual control over KK Glass employees' use of fall-protection equipment during the exterior glass-installation process. The Harrisons respond that LLC observed and expressly

approved of KK Glass employees using faulty fall-protection equipment, including using a bosun's chair without an independent lifeline.

■ The evidence at trial supports the Harrisons' contention. At trial, Lee Lewis, LLC's owner and president, testified that he assigned C.L. Lewis, LLC's job superintendent, "the responsibility to routinely inspect the ninth and tenth floor addition to the south tower to see to it that the subcontractors and their employees properly utilized fall protection equipment." Testimony indicated that C.L. Lewis personally witnessed and approved of the specific fall-protections systems KK Glass used. There was testimony that C.L. Lewis "definitely did approve" the lanyard system. There was also testimony that C.L. Lewis knew of and did not object to KK Glass employees using a bosun's chair without an independent lifeline. Although our law makes clear that a general contractor is not an ensurer of safety on the jobsite, *see Elliott–Williams*, 9 S.W.3d at 803, we agree with the Harrisons that the testimony highlighted above constitutes more than a scintilla of evidence that LLC retained the right to control fall-protection systems on the jobsite. LLC therefore had a duty of care toward Harrison commensurate with that right. Because we conclude that LLC retained the right to control fall-protection systems on the jobsite, we need not address its argument that it did not retain the right to control by contract.

■ We turn next to LLC's no-evidence challenge to proximate cause. LLC contends that even if it did owe a legal duty to Harrison, the Harrisons did not prove that LLC's conduct ˙proximately caused Jimmy Harrison's death. Specifically, LLC argues that because no one saw Harrison fall, there was no evidence that LLC's conduct was the cause-in-fact of Harrison's death, nor was there evidence

that the accident was foreseeable. The Harrisons respond that LLC's failure to require its subcontractors' employees to use independent lifelines was a cause-in-fact of Harrison's death, and that LLC knew or should have known that workers using an ineffective fall-protection system could suffer a fatal fall. We agree with the Harrisons.

■ As the Harrisons correctly point out, the question here is whether an act by LLC was "a" proximate cause, not "the" proximate cause, of Harrison's death. More than one act may be the proximate cause of the same injury. *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992); *Brookshire Bros., Inc. v. Lewis*, 911 S.W.2d 791, 793 (Tex.App.—Tyler 1995, writ denied). Proximate cause comprises two elements: cause-in-fact and foreseeability. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995). The test for cause-in-fact is whether the act or omission was a substantial factor in causing the injury "without which the harm would not have occurred." *Id.*

Here, LLC employee Sloan Butler and LLC vice-president Tom Ferguson testified that Harrison would not have died from his fall if he had been secured by an independent lifeline. Expert witnesses concurred. Even if Harrison had started to fall, the independent lifeline would have stopped his fall before it became fatal. At trial, LLC employees, KK Glass employees, and expert witnesses testified that an effective fall-protection system would have mandated using independent lifelines. Evidence showed that LLC required its own employees to use independent lifelines, but permitted KK Glass employees to work without them. In fact, LLC's superintendent observed Harrison working without an independent lifeline but did nothing to remedy the situation. LLC could have prevented Harrison's death if it had enforced its own safety rules and required

KK Glass employees to use independent lifelines. Thus, there is more than a scintilla of evidence from which the jury could have concluded that LLC's failure to require KK Glass workers to use independent lifelines was a substantial factor in causing Harrison's death.

The second element of proximate cause is foreseeability. Foreseeability means that an "actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Travis*, 830 S.W.2d at 98. Foreseeability does not require an actor to anticipate the precise manner in which the injury will occur; instead, the injury need only be of a general character that the actor might reasonably anticipate. *See Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 223–24 (Tex.1988).

At trial, Lee Lewis testified that he knew falls were one of the top causes of death in multi-story construction. He was aware that the building required exterior work, and that workers, including KK Glass employees, would be exposed to fall hazards. This testimony constitutes more than a scintilla of evidence that LLC foresaw the "general character" of injury that Harrison sustained. Thus, we conclude that the evidence of proximate cause is legally sufficient.

LLC also challenges the legal sufficiency of the evidence to support the jury's gross-negligence finding. In *Transportation Insurance Co. v. Moriel*, we held that gross negligence involves two components: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. 879 S.W.2d 10, 23 (Tex.1994).

The first element, "extreme risk," means not a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex.1998); *Universal Servs. Co. v. Ung*, 904 S.W.2d 638, 641 (Tex.1995); *Moriel*, 879 S.W.2d at 22. The second element, "actual awareness," means that the defendant knew about the peril, but its acts or omissions demonstrated that it did not care. *Ellender*, 968 S.W.2d at 921; *Wal–Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 326 (Tex.1993). Circumstantial evidence is sufficient to prove either element. *Ellender*, 968 S.W.2d at 921; *Moriel*, 879 S.W.2d at 22–23.

Evidence of gross negligence is legally sufficient if, considered as a whole in the light most favorable to the prevailing party, it rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *General Motors Corp. v. Sanchez*, 997 S.W.2d 584, 595 (Tex.1999). Some evidence of simple negligence is not evidence of gross negligence. *Id.; Ellender*, 968 S.W.2d at 921; *Ung*, 904 S.W.2d at 641; *Moriel*, 879 S.W.2d at 22–23. Conversely, some evidence of care does not defeat a gross-negligence finding. *Sanchez*, 997 S.W.2d at 595. We turn now to the evidence that satisfies each element, which we review in the light most favorable to the jury's finding. *See id.*

First, there is more than a scintilla of evidence that, objectively viewed from LLC's standpoint, working on the tower's ninth and tenth floors without using an independent lifeline created an extreme risk of a fatal fall. At trial, Lee Lewis testified that falls are among the top reasons for serious injuries or deaths on construction projects, and that the hospital project presented a fall hazard because workers would be required to work on the exterior of the ninth and tenth floors.

C.L. Lewis, Tom Ferguson, and several expert witnesses also testified that the project posed obvious risks of falls. The dangerous nature of multi-story construction projects alone is not enough to satisfy the objective component of gross negligence. But in this case, there is evidence that does satisfy the objective component, and that is the extreme risk of serious injury, apparent to anyone in LLC's position, from not using an independent lifeline while doing exterior work on the tenth floor of the building.

There is also evidence to support the *Moriel* standard's subjective component. C.L. Lewis testified that he witnessed KK Glass employees working from the window sills of the ninth and tenth floors using only safety belts and lanyards as their fall-prevention devices. He testified, as did other LLC executives and expert witnesses, that KK Glass' use of safety belts and lanyards, without safe work platforms or independent lifelines, did not provide an effective fall-protection system. C.L. Lewis admitted that even after observing KK Glass' ineffective fall-protection system, he did nothing to remedy it. Todd Taylor, KK Glass' foreman, testified that C.L. Lewis not only observed KK Glass' fall-protection system, but expressly approved it. Moreover, evidence showed that LLC workers, in contrast to their KK Glass counterparts, did use independent lifelines as part of their fall-protection equipment. *See Ellender*, 968 S.W.2d at 925. This evidence supports the jury's finding that LLC knew of, but was consciously indifferent to, the risk of fatal falls for its subcontractors' employees. This

evidence shows that LLC was subjectively aware of the extreme risk of serious injury to KK Glass employees, but consciously chose to do nothing. Thus, because there is more than a scintilla of evidence supporting each component of the *Moriel* test, we conclude that the evidence of LLC's gross negligence is legally sufficient.

As a final matter, we consider LLC's alternative argument that it is entitled to a new trial because the trial court submitted a legally incorrect question about LLC's right of control on the jobsite. The first jury question read: "Did Lee Lewis Construction, Inc. retain the right to control safety on the construction project where Jimmy Harrison suffered his fatal fall?" LLC objected to this question on the basis that it was not specific enough and should have asked if LLC retained the right to control the details of Harrison's use of the bosun's chair, lanyards, and safety belt. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 529 (Tex.1997). The Harrisons respond that inquiring about the right to control particular safety devices is unnecessary because the right of control over safety is a specific right. *See Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex. 1993). They also argue that LLC's complaint about the first jury question is mooted because it did not object to the second question, which submitted the same factual inquiry about right of control.[1] Any error in the first question would therefore be harmless, because the same verdict would have been reached based on an affirmative response to the second question.

■ We agree with the Harrisons that any error in submitting the first question

---

1. The second question read:
 Did the negligence, if any, of the persons named below proximately cause the occurrence in question? ... "Negligence," when used with respect to a general contractor, means the failure to use *ordinary care* with regard to its retained right of control, if

any, to reduce or eliminate an unreasonable risk of harm created by an activity or condition on the premises which the general contractor either knows about or in the exercise of ordinary care should know about. "Ordinary care," when used with respect to a general contractor, means that degree of

was harmless because of the jury's affirmative answer to the second question. The second question resubmitted the duty issue to the jury by defining negligence in terms of LLC's failure to use ordinary care with regard to its "retained right of control, if any." LLC did not object to this question. The jury's affirmative answer to the second question was sufficient to support liability. Thus even if the trial court erred in submitting the first question, any error was harmless. *See* TEX. R.APP.P. 61.1.

Because the evidence of LLC's negligence and gross negligence was legally sufficient to support the jury's verdict, and because any error in the charge submitted was harmless, we affirm the court of appeals' judgment.

Chief Justice PHILLIPS filed a concurring opinion, in which Justice RODRIGUEZ joined.

Justice HECHT filed a concurring opinion, in which Justice OWEN joined.

Justice JEFFERSON filed a concurring opinion.

Chief Justice PHILLIPS joined by Justice RODRIGUEZ concurring.

I join in the unanimous judgment of the Court and in JUSTICE HANKINSON's opinion

explaining that judgment. Her writing accurately articulates and applies current Texas common law. But I do so with substantial misgivings about our approach in suits against general contractors for injuries to a subcontractor's employees. Our focus on the degree of the general contractor's "retained control" has failed to provide either consistent or equitable results, and I believe that a thorough reconsideration of this area is in order.

JUSTICE HECHT has authored a thoughtful and scholarly concurrence, and his views merit the close attention of the bench and bar. But his views clearly constitute a change in Texas law, while neither party in this case argues anything other than established precedent to support its respective position. Moreover, JUSTICE HECHT's position seems to have been adopted by only a small minority of American jurisdictions.[1] I am especially reluctant to abandon settled law which is consistent with the majority American view without thorough briefing from the parties and other interested persons.

Justice HECHT, joined by Justice Owen, concurring.

Sixteen years ago in *Redinger v. Living,*

care which would be used by a general contractor of ordinary prudence under the same or similar circumstances.

1. Most states that have considered this issue have decided or assumed that "others" in section 414 includes a subcontractor's employees. *See Everette v. Alyeska Pipeline Serv. Co.,* 614 P.2d 1341, 1347 (Alaska 1980); *Lewis v. N.J. Riebe Enters., Inc.,* 170 Ariz. 384, 825 P.2d 5, 9 (1992); *Elkins v. Arkla, Inc.,* 312 Ark. 280, 849 S.W.2d 489, 490 (1993); *Ahl v. Stone Southwest,* 666 So.2d 922, 924–25 (Fla.Dist.Ct.App.1995); *Lyon v. Morphew,* 424 Mass. 828, 678 N.E.2d 1306, 1310 (1997); *Plummer v. Bechtel Constr. Co.,* 440 Mich. 646, 489 N.W.2d 66 (1992); *Beckman v.*

*Butte–Silver Bow County,* 299 Mont. 389, 1 P.3d 348, 355 (2000); *Parrish v. Omaha Pub. Power Dist.,* 242 Neb. 783, 496 N.W.2d 902, 912 (1993); *Valdez v. Cillessen & Son, Inc.,* 105 N.M. 575, 734 P.2d 1258, 1261 (1987); *Rogstad v. Dakota Gasification Co.,* 623 N.W.2d 382, 386, 389 (N.D.2001); *Byrd v. Merwin,* 456 Pa. 516, 317 A.2d 280, 282 (1974); *Ashby v. Northwestern Pub. Serv. Co.,* 490 N.W.2d 286, 290 (S.D.1992); *Thompson v. Jess,* 979 P.2d 322, 326 (Utah 1999); *Kelley v. Howard S. Wright Constr. Co.,* 90 Wash.2d 323, 582 P.2d 500, 505 (1978); *Summers v. Crown Constr. Co.,* 453 F.2d 998, 1000 (4th Cir.1972) (applying West Virginia law).

*Inc.,*[1] this Court recognized, as courts in most states have, that a person can be liable for harm caused by an independent contractor if the person controls the contractor's work. More specifically, we adopted the rule set out in section 414 of the *Restatement (Second) of Torts* as follows:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty of reasonable care, which is caused by his failure to exercise his control with reasonable care.[2]

This rule makes the retention of control over an independent contractor's work a necessary, but not a sufficient, condition of liability. Another prerequisite for liability under the rule is that the person harmed be among those "others for whose safety the employer owes a duty of reasonable care". We have applied the rule in eight cases,[3] each of which focused exclusively on the retention of control. In the six most recent cases, we concluded that the defendant did not control the work to the extent required for liability, and thus we did not need to consider any other aspect of the rule. In *Redinger* and a case decided seven weeks later,[4] no argument was made that the plaintiff was not among those to whom the defendant owed a duty. Accordingly, we have never had a case in which we considered what duty the employer of an independent contractor has to protect the safety of others, including the contractor's own employees.

This case requires that we do so. The Court agrees that the degree of control required for liability was present here, based solely on the activity on the project, and apart from the parties' contractual arrangements. Those arrangements also gave the general contractor an extensive degree of control over safety. The general contractor agreed with the owner to be responsible for the safety of its own employees, its independent subcontractors' employees, and everyone else on the construction site. The general contractor required the subcontractors to agree to adhere to a voluminous, detailed safety manual under penalty of being removed from the project. Although subcontractors agreed to be responsible for the safety of their own employees, the general contractor had the right to monitor their efforts and did so. Contractually and actually, the general contractor had thorough control of safety on the site, which is typical for major construction projects. Such control over independent contractors serves the important public interest of minimizing work-related injuries. That interest would be impaired if a general contractor's retention of control over job safety triggered a liability to which it would not be exposed if it gave independent contractors free rein to take whatever risks they chose in order to get the work done. Section 414 would be a perverse rule indeed if it punished the general contractor who tried to protect workers

1. 689 S.W.2d 415, 418 (Tex.1985).

2. *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 414(1965)).

3. *Id.; Tovar v. Amarillo Oil Co.,* 692 S.W.2d 469 (Tex.1985) (per curiam); *Enserch Corp. v. Parker,* 794 S.W.2d 2 (Tex.1990); *Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523 (Tex.1997); *Hoechst–Celanese Corp. v. Men-dez,* 967 S.W.2d 354 (Tex.1998) (per curiam); *Coastal Marine Serv., Inc. v. Lawrence,* 988 S.W.2d 223 (Tex.1999) (per curiam); *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801 (Tex. 1999); *Koch Ref. Co. v. Chapa,* 11 S.W.3d 153 (Tex.1999) (per curiam).

4. *Tovar v. Amarillo Oil Co.,* 692 S.W.2d 469 (Tex.1985) (per curiam).

by controlling job safety and exonerated the general contractor who stood aside and let them fend for themselves.

The retention of control over safety on a construction site is necessary, but not sufficient, to impose liability on the general contractor for harm caused by an independent subcontractor. More is required. The Court does not reject this analysis; it simply refuses to clarify the issue. As I will show, the history of section 414 and its application in other jurisdictions demonstrates that liability does not turn solely on the retention of control.

In this case, there is more than retained control. The general contractor also actually knew that the independent subcontractor was using an extremely dangerous device in its work and did nothing to stop it. The evidence supports the jury's findings that the subcontractor and the general contractor were both grossly negligent, the one in using the device, and the other in failing to prevent its use. While liability under section 414 may not be restricted to such egregious circumstances, it is certainly invoked by them.

Accordingly, I would affirm the judgment for the plaintiffs, as the Court does, but for the reasons I now explain.

**I**

The facts sketched in the Court's sparse opinion do not give sufficient context in which to consider the important legal issues raised. The record reflects the following.

Methodist Hospital in Lubbock engaged Lee Lewis Construction, Inc. to be the general contractor on a construction project that included remodeling the eighth floor of one of the Hospital's buildings and adding ninth and tenth floors. The contract between the Hospital and LLC contained standard form provisions published by the American Institute of Architects and widely used in the construction industry that required LLC to be "solely responsible" for every aspect of the work,[5] including "initiating, maintaining and supervising all safety precautions and programs",[6] and to take "all reasonable precautions for the safety of . . . all employees" at the site,[7] including assigning one of its employees at the site the duty of preventing accidents.[8] The contract contemplated that LLC would use subcontractors to do the work and required that they each undertake to LLC the same responsibilities for their own work that LLC owed Methodist for the project as a whole.[9]

---

5. "4.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for all construction means, methods, techniques, sequences and procedures. . . ."

6. "10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the Work."

7. "10.2.1 The Contractor shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to: .1 all employees on the Work and all other persons who may be affected thereby. . . ."

8. "10.2.6 The Contractor shall designate a responsible member of the Contractor's organization at the site whose duty shall be the prevention of accidents."

9. "5.3.1 By an appropriate agreement, written where legally required for validity, the Contractor shall require each Subcontractor, to the extent of the Work to be performed by the Subcontractor, to be bound to the Contractor by the terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities which the Contractor, by these Documents, assumes toward the Owner, the Architect and the Construction Manager."

One of the subcontractors, KK Glass Co., was to do the glass glazing and window installation. The work required KK Glass employees to install aluminum window frames from inside the building but then lean out over the side of the building to do caulking, thermal insulation, and other work. Setting the glass in place had to be done from a swinging stage outside the building. KK Glass's contract obligated it to assume toward LLC all of the duties LLC had undertaken toward Methodist [10] and to abide by all applicable governmental safety rules as well as LLC's safety rules, some of which were specified. The subcontract authorized LLC to remove from the project any KK Glass employee who failed to comply with safety requirements.[11]

KK Glass was primarily responsible for the safety of its own employees. To keep from falling out of the building while they worked near the edge, KK Glass employees were required by their supervisor to tie themselves to inside steel girders with lanyards—six-foot steel cables with clasps at both ends. One end of a lanyard was looped around an exposed steel I-beam and attached to itself to form a noose around the beam. The other end was attached to a belt the worker wore around his waist. The beams were eight feet above the floor, and if the lanyard would not reach, the worker used two lanyards hooked end-to-end. To loop a lanyard around a beam, a worker would either have to throw the end of the lanyard up over the beam and grab it as it came down, or else climb up on a ladder and wrap the lanyard around the beam. Either way was

itself dangerous because the beams were near the building's edge, and LLC installed guard rails in the window openings to help prevent falls. Properly used, the lanyards served as a "lifeline"—an attachment to the building that was not work-related and that would immediately become taut if a worker fell. But KK Glass employees often used the lanyards to steady themselves as they leaned out window openings, although they were not supposed to do so. KK Glass also allowed its employees to work outside the building sitting on a "bosun's chair", a wooden board suspended from the roof by a rope. The bosun's chair could not be used safely unless the worker was attached to the building by an independent lifeline separate from the rope that held the "chair"; otherwise, there would be nothing to prevent the worker from falling to the ground if the rope became detached or if the worker slipped while getting onto or off of the "chair", or while sitting on it.

LLC's project superintendent was responsible for making routine inspections of the upper floors of the building to ensure that the subcontractors' employees were properly utilizing fall-prevention equipment. LLC knew that working at such heights around the open edges of the building was very dangerous and that employees who failed to use fall-prevention equipment could fall to their deaths. LLC expected its superintendent to immediately correct any safety hazards and ban any subcontractor's noncompliant employees from the premises. Although LLC depended on KK Glass to devise its own fall-

---

**10.** "Subcontractor agrees to be bound to Contractor by all of the terms of the Agreement between Contractor and Owner and by the Contract Documents and to assume toward Contractor all of the obligations and the responsibilities that Contractor by those instruments assumes toward Owner."

**11.** "If Subcontractor's Foreman and all employees do not comply with the above, Contractor has the authority to remove the employees and the Foreman from the project and Subcontractor agrees to provide a new Foreman who will enforce the Safety Rules."

prevention equipment, LLC knew and specifically approved of KK Glass's lanyard system, which was also being used by another subcontractor. An OSHA inspector had seen the system in use and raised no objection to it. LLC's superintendent had also watched without objection as KK Glass employees attached the bosun's chair to the roof and used it without a lifeline. Indeed, anyone could clearly see from the ground that KK Glass employees were working outside the building eight floors up suspended by nothing more than a board attached to a nylon rope hung from the roof.

Jimmy Harrison, a KK Glass employee, was working on a window on the tenth floor of the building when he fell to his death. No one witnessed his actual fall, and some of his coworkers believed that Harrison had been working inside the building while others thought he had been outside in the bosun's chair. Harrison's body was found with a lanyard hooked to his safety belt. KK Glass employees immediately disconnected the bosun's chair from the roof and removed it. It was never found.

Harrison's wife, two children, and parents sued KK Glass for gross negligence. Because KK Glass was a workers' compensation subscriber, it was protected by the Texas Workers' Compensation Act from liability for injury to its employees except for its intentional conduct or gross negligence resulting in death.[12] KK Glass settled prior to trial. The Harrisons also

sued LLC for negligence and gross negligence. The jury found that LLC retained the right to control safety on the project, that Harrison's death was caused ten percent by his own negligence and ninety percent by LLC's negligence, and that LLC was grossly negligent. The jury charge defined "negligence" and "gross negligence" with respect to LLC as follows:

"Negligence," when used with respect to a general contractor, means the failure to use ordinary care with regard to its retained right of control, if any, to reduce or eliminate an unreasonable risk of harm created by an activity or condition on the premises which the general contractor either knows about or in the exercise of *ordinary care* should know about.

"Ordinary care," when used with respect to a general contractor, means that degree of care which would be used by a general contractor of ordinary prudence under the same or similar circumstances.

"Gross negligence" means more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission in question was the result of actual conscious indifference to the rights, welfare, or safety of the persons affected by it.

The jury found actual damages of $500,000 for Harrison, $1.7 million for his wife, $1.5 million for his daughter, $1 million for his

---

12. " § 408.001 Exclusive Remedy; Exemplary Damages

"(a) Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

"(b) This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence.

"(c) In this section, "gross negligence" has the meaning assigned by Section 41.001, Civil Practice and Remedies Code."

Tex. Lab.Code § 408.001.

son, and $200,000 for his parents. The jury also set punitive damages at $5 million. The trial court rendered judgment on the verdict for actual and punitive damages and interest totaling $12,920,461.60.

LLC appealed. The court of appeals held that LLC retained control over job safety on the project so as to be liable for injury to its subcontractors' employees, and that the evidence supported the jury's findings that its negligence and gross negligence in the exercise of its retained control caused Harrison's death.[13] The court of appeals ordered a remittitur of $450,000 of the damages awarded Harrison and otherwise affirmed the trial court's judgment.[14] This Court granted LLC's petition for review.[15]

## II

LLC's principal argument is that it did not owe its subcontractors' employees a duty to exercise reasonable care for their safety, despite its retention of control over jobsite safety, but rather that it was each subcontractor's responsibility to look out for its own employees. The answer to this argument requires a deeper analysis of section 414 of the *Restatement* than the Court has done before, or than it does today.

The well-established, long-standing, common-law rule, as recited in section 409 of the *Restatement (Second) of Torts*, is that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants",[16] and that is the rule in Texas.[17] But courts have engrafted so many exceptions onto the rule, some of which have become as well-recognized as the rule itself, that it cannot be properly applied without considering the nature of the situation in which it is invoked.[18] A number of these exceptions are set out in chapter 15 of the *Restatement* in sections 410–429.[19] Not all of these exceptions have been recognized by Texas courts, but section 414 has.

In *Redinger v. Living, Inc.*, the general contractor on a construction project had ordered the dirt hauling subcontractor to move a pile of dirt out of the way of concrete trucks, and in the process of complying the subcontractor's employee had injured an employee of the plumbing subcontractor who was working nearby.[20] This Court held that the general contractor's right to control a subcontractor's work so specifically gave rise to a duty of care to another subcontractor's employee.[21] Since *Redinger*, the Court has considered section 414 in seven other cases,[22] each

13. 64 S.W.3d at 6–9.

14. *Id.* at 22.

15. 43 Tex. Sup.Ct. J. 482 (Mar. 9, 2000).

16. RESTATEMENT (SECOND) OF TORTS § 409 (1965).

17. *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 803 (Tex.1999); *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985); *Abalos v. Oil Dev. Co. of Texas,* 544 S.W.2d 627, 631 (Tex. 1976).

18. *See* RESTATEMENT (SECOND) OF TORTS § 409 cmt b (1965) ("The exceptions have developed, and have tended to be stated, very

largely as particular detailed rules for particular situations, which are difficult to list completely, and few courts have attempted to state any broad principles governing them, or any very satisfactory summaries.").

19. *Id.* §§ 410–429.

20. *Redinger,* 689 S.W.2d at 417.

21. *Id.* at 418.

22. *Coastal Marine Serv., Inc. v. Lawrence,* 988 S.W.2d 223 (Tex.1999) (per curiam); *Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801 (Tex. 1999); *Koch Ref. Co. v. Chapa,* 11 S.W.3d 153 (Tex.1999) (per curiam); *Hoechst–Celanese*

focusing on the degree of control retained by the employer of the independent contractor. An employer's retained control, we have said, can be demonstrated either by contract or by the employer's actual conduct.[23] We have stated that for the employer to have any duty of care its right of control must not merely be general or supervisory but must extend to the "operative detail" of the contractor's work so that the contractor is not free to do the work in its own way,[24] and to the injury-producing activity itself.[25] We have also stated that any duty is commensurate with the degree of control the employer retains,[26] and that an employer "must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability."[27] We have specifically recognized that the employer of an independent contractor should not be forced to choose between the risk of injury from not intervening in the contractor's work the risk of liability from such intervention:

> "We do not believe that a general contractor or an employer is required to stand idly by while another is injured or killed in order to avoid liability. Nor do we believe that the liability rules contemplate putting those who employ independent contractors in that position."[28]

Only once has this Court held an employer liable for an independent contractor's negligent injury to the contractor's own employee. In *Tovar v. Amarillo Oil Co.*, we upheld the liability of the operator of an oil and gas lease for injury to a drilling company's employee from the driller's misuse of a blowout preventer which the operator had specifically prohibited in the drilling contract and of which the operator was actually aware.[29] In each of the other cases, and in one preceding *Redinger*,[30] we concluded that the employer of the independent contractor had no liability to the contractor's employee. Because we have never imposed such liability apart from the special circumstances in *Tovar*, we have never fully considered the ramifications of doing so.

But others have, including the drafters of the *Restatement*. Section 414, like several sections in chapter 15, speaks in terms of liability to "others". As for who was included in this reference, a preliminary draft of chapter 15 contained the following special note:

> The rules stated in this Chapter are, in general, not applicable to make the defendant who hires an independent contractor liable to two classes of persons.

> One consists of the employees, or servants, of the defendant himself. . . .

> The other class of plaintiffs not included in this Chapter consists of the em-

---

Corp. v. Mendez, 967 S.W.2d 354 (Tex.1998) (per curiam); *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523 (Tex.1997); *Enserch Corp. v. Parker*, 794 S.W.2d 2 (Tex.1990); *Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469 (Tex. 1985) (per curiam).

**23.** *Olivo*, 952 S.W.2d at 528.

**24.** *Mendez*, 967 S.W.2d at 356 (citing Restatement (Second) of Torts § 414 cmt. a & c (1965)).

**25.** *Olivo*, 952 S.W.2d at 528.

**26.** *Diaz*, 9 S.W.3d at 803.

**27.** *Chapa*, 11 S.W.3d at 156.

**28.** *Mendez*, 967 S.W.2d at 358 (quoting *Welch v. McDougal*, 876 S.W.2d 218, 224 (Tex. App.—Amarillo 1994, writ denied)).

**29.** 692 S.W.2d at 470.

**30.** *Abalos v. Oil Dev. Co.*, 544 S.W.2d 627, 632 (Tex.1976).

ployees of the independent contractor. As the common law developed, the defendant who hired the contractor was under no obligation to the servants of the contractor, and it was the contractor who was responsible for their safety. The one exception which developed was that the servants of the contractor doing work upon the defendant's land were treated as invitees of the defendant, to whom he owed a duty of reasonable care to see that the premises were safe. This is still true. In other respects, however, it is still largely true that the defendant has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one who hires the contractor, since it is to be

expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him.

Again, when the Sections in this Chapter speak of liability to "another" or "others," or to "third persons," it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included.[31]

This note was omitted from the final draft at the recommendation of Professor William L. Prosser, the reporter, because of a lack of uniformity among courts on the issue due in part to the states' different workers' compensation acts,[32] although he acknowledged that "certainly the prevailing point of view is that there is no liability on the part of the employer of the independent contractor."[33]

In the thirty-five years since chapter 15 of the *Restatement (Second) of Torts* was published, the view Professor Prosser described as prevailing has become near-universal with respect to three of its provisions, sections 413,[34] 416,[35] and 427,[36] which

---

**31.** RESTATEMENT (SECOND) OF TORTS ch. 15 (Tentative Draft No. 7, 1962) (citation omitted).

**32.** 39 A.L.I. PROC. 246 (1962).

**33.** *Id.* at 247.

**34.** "One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions." RESTATEMENT (SECOND) OF TORTS § 413 (1965).

**35.** "One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise." *Id.* § 416.

**36.** "One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm

restate what many courts have called the "peculiar risk" doctrine. That doctrine teaches that " 'a landowner who [chooses] to undertake inherently dangerous activity on his land should not escape liability for injuries to others simply by hiring an independent contractor to do the work.' " [37] The United States Court of Appeals for the Third Circuit correctly summarized the evolution of the law in *Monk v. Virgin Islands Water & Power Authority:*

> In the first decade after the adoption of the *Restatement,* courts split on whether to permit a contractor's employees to sue under the peculiar risk provisions of Chapter 15. Since the early 1980s, however, an overwhelming majority of state high courts to consider the issue have held that employers are not liable to such employees, with some even overruling prior interpretations of the *Restatement.* A majority of our sister circuits also have so ruled when called upon to resolve the issue in cases under state and federal law.[38]

The court cited extensive authority for each of these statements, which I do not copy here. Consistent with the obvious weight of authority, the court in *Monk* concluded that "employees of an independent contractor are not included within the protected class of 'others' under the peculiar risk provisions of Chapter 15 of the *Restatement.*" [39] The California Supreme Court has since endorsed the position taken by *Monk* as being "shared by an overwhelming majority of courts that have considered the issue." [40]

The several justifications for not imposing liability on the employer of an independent contractor for injuries to the contractor's employees due to the peculiar risks of the work undertaken are refinements of two basic arguments, one that liability is inconsistent with the workers' compensation system, and the other that liability is inconsistent with the general nature of the relationship between an independent contractor and its employer. The first argument encompasses these considerations:

> *First:* The hire for a subscribing independent contractor presumably includes the cost of providing workers' compensation coverage related to the work, and the contractor's employer who pays it should have the same protection from extra liability for job-related injuries to the contractor's employees that the contractor has.[41] The employer thus has the same economic incentive the contractor has to minimize job-related risks to workers.[42] The employer is not like a product manufacturer or other stranger to the work relationship who has not born any part of the cost of compensation and therefore is not immune from

caused to such others by the contractor's failure to take reasonable precautions against such danger." *Id.* § 427.

**37.** *Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721, 724–725 (1993).

**38.** 53 F.3d 1381, 1391–1392 (3d Cir.1995) (footnotes omitted).

**39.** *Id.* at 1393.

**40.** *Toland v. Sunland Housing Group, Inc.,* 18 Cal.4th 253, 74 Cal.Rptr.2d 878, 955 P.2d 504, 513 (1998).

**41.** *Privette,* 21 Cal.Rptr.2d 72, 854 P.2d at 728; *Monk v. Virgin Is. Water & Power Auth.,* 53 F.3d 1381, 1392 (3d Cir.1995); *Anderson v. Marathon Petroleum Co.,* 801 F.2d 936, 941 (7th Cir.1986).

**42.** *Anderson,* 801 F.2d at 941.

liability for injury to the contractor's employees.[43] Imposing liability on the employer for the contractor's negligent injury of its employee is simply inconsistent with the "bedrock principle" that workers' compensation is an employee's exclusive remedy and full compensation for job-related injuries.[44]

*Second:* An employer should not be exposed to greater risk of liability for wisely entrusting peculiarly dangerous work to a better-skilled independent contractor than if he had undertaken the job with his own less capable employees.[45] The employer pays for compensation coverage in either case, directly or indirectly, and he should not have less protection from liability for having acted more prudently.

*Third:* A worker should not have greater rights as an employee of an independent contractor than he would have as an employee of the contractor's employer.[46] The sole redress of an employer's employee for a job-related injury is compensation benefits, and his recovery against the same person for the same injury on the same job should be no greater simply because he has been engaged by the employer's independent contractor.[47]

The second argument—that liability is inconsistent with the nature of the relationship between an independent contractor and its employer—involves these considerations:

*First:* An employer cannot fairly share with its independent contractor primary responsibility for job-site safety of the contractor's employees because an employer is not as well placed to protect the contractor's own employees.[48] The contractor is more closely associated with its own employees and has a greater opportunity to ensure their safety. But more than this, the contractor has often been hired for its expertise in the work to be done and its superior ability to see that the work is done safely.[49] For employers to share liability for injuries to contractors' employees would make employers "the virtual insurers" of the workplace amounting to "a revolution in liability." [50]

*Second:* An employer's liability for accidents should not increase the harder he tries to ensure that his independent contractors work safely and decrease the less he cares what happens.[51] The risk to all workers is only increased by such a perverse rule.

I know of only two courts that have considered whether these same arguments apply to restrict an employer's liability for retained control of an independent contractor's work under section 414 of the *Restatement.* One is an intermediate appellate court in California,[52] and the other is a federal district court in the Virgin Is-

---

43. *Id.*

44. *Id.*

45. *Privette,* 21 Cal.Rptr.2d 72, 854 P.2d at 728.

46. *Id.* at 729.

47. *Anderson,* 801 F.2d at 942.

48. *Id.* at 938.

49. *Id.* at 939.

50. *Id.* at 941.

51. *Monk,* 53 F.3d at 1392–1393.

52. *Kinney v. CSB Constr., Inc.* 86 Cal.App.4th 840, 103 Cal.Rptr.2d 594, 598–600 (2001, review granted).

lands.[53] Both have concluded that the arguments apply with equal force. The Supreme Court of Minnesota has reached the same conclusion without analysis.[54]

CHIEF JUSTICE PHILLIPS in his concurring opinion questions whether this is a minority view. It is not. Of the cases he cites, only two actually hold that the duty under section 414 extends to an independent contractor's employees, and neither analyzes the considerations I have set out.[55] Nine cases focus only on the degree of control the defendant retained, just as this Court's prior cases have, and do not discuss the scope of the duty in section 414.[56] In four of them, the defendant was held not liable as a matter of law.[57] Three cases hold that a general contractor has a duty to keep safe common areas where several subcontractors are working.[58] One case holds that a premises owner may be liable for a dangerous condition it actually creates.[59]

The arguments regarding the scope of chapter 15 of the *Restatement* in general, like the special note in the preliminary draft, have no less force with respect to section 414, but they still may apply differently in different circumstances. One cannot simply say that the retention of control over an independent contractor's work never gives rise to a duty to the contrac-

53. *Gass v. Virgin Is. Tel. Corp.*, 149 F.Supp.2d 205, 219–220 (D.Vi.2001).

54. *Sutherland v. Barton*, 570 N.W.2d 1, 5 (Minn.1997) ("As a preliminary matter, we note that when applying the *Restatement* sections that impose liability on companies hiring independent contractors, we have held that 'others' does not include the employees of an independent contractor. This limitation also applies to § 414." (Citation omitted.)).

55. *Lewis v. N.J. Riebe Enters., Inc.*, 170 Ariz. 384, 825 P.2d 5, 8–9 (1992) (construing section 414 consistently with Arizona law that provides that "a general contractor has a duty to provide a safe workplace for the employees of subcontractors"); *Valdez v. Cillessen & Son, Inc.*, 105 N.M. 575, 734 P.2d 1258, 1262 (1987) (stating only that if the employer of an independent contractor "has the right to, and does, retain control of the work performed by the independent contractor, he owes the duty of care to the independent contractor's employee which, if breached, can result in liability to the employee").

56. *Everette v. Alyeska Pipeline Serv. Co.*, 614 P.2d 1341 (Alaska 1980); *Elkins v. Arkla, Inc.*, 312 Ark. 280, 849 S.W.2d 489 (1993); *Lyon v. Morphew*, 424 Mass. 828, 678 N.E.2d 1306 (1997); *Beckman v. Butte–Silver Bow County*, 299 Mont. 389, 1 P.3d 348 (2000); *Rogstad v. Dakota Gasification Co.*, 623 N.W.2d 382 (N.D.2001); *Byrd v. Merwin*, 456 Pa. 516, 317 A.2d 280 (1974); *Ashby v. Northwestern Pub.*

Serv. Co., 490 N.W.2d 286 (S.D.1992); *Thompson v. Jess*, 979 P.2d 322 (Utah 1999); *Summers v. Crown Constr. Co.*, 453 F.2d 998 (4th Cir.1972).

57. *Lyon v. Morphew*, 424 Mass. 828, 678 N.E.2d 1306 (1997); *Rogstad v. Dakota Gasification Co.*, 623 N.W.2d 382 (N.D.2001); *Ashby v. Northwestern Pub. Serv. Co.*, 490 N.W.2d 286 (S.D.1992); *Thompson v. Jess*, 979 P.2d 322 (Utah 1999).

58. *Plummer v. Bechtel Constr. Co.*, 440 Mich. 646, 489 N.W.2d 66 (1992) (involving an independent contractor's employee who fell from a catwalk used by other subcontractors on the project); *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 783, 496 N.W.2d 902 (1993) (involving an independent contractor's employee who fell from a portable platform in a common work area controlled by the owner and general contractor); *Kelley v. Howard S. Wright Constr. Co.*, 90 Wash.2d 323, 582 P.2d 500 (1978) (involving an independent contractor's employee whose fell because the general contractor did not provide a safety net to protect all workers on the job).

59. *Ahl v. Stone Southwest, Inc.*, 666 So.2d 922 (Fla.Dist.Ct.App.1995) (involving an independent contractor's employee who slipped in a puddle of water and grease created by the premises owner's employees).

tor's own employees, any more than one can say that it always does. Either approach, in the absolute, offends the policies that should inform the application of the rule, as the present case illustrates. Compensation benefits are not the exclusive remedy under Texas law in one situation: when a worker is killed by his employer's gross negligence.[60] In that situation, holding the employer of an independent contractor liable for failing to exercise a retained control over the contractor's work is not inconsistent with the workers' compensation system. The employer cannot claim the protection of the exclusivity of compensation benefits because the contractor has no such protection. Had the employer undertaken the work with his own employees, his liability would be the same; and had the deceased employee worked for the employer instead of the contractor, his rights would be the same.

The argument is left that imposing liability on the employer of an independent contractor for the death of the contractor's employee is inconsistent with the relationship between the employer and the contractor. But the argument applies differently when injury has been caused by the contractor's gross negligence. To burden an employer with a general duty of care for an independent contractor's employees is inconsistent with the principal reasons for assigning work to a contractor. Still, it is hardly unreasonable to expect the employer to take some action to prevent a contractor's grossly negligent conduct of which the employer is actually aware. Imposing liability on an employer in such circumstances is not a disincentive to improve workplace safety; on the contrary, the prospect of such liability would actually increase job safety because the employer could not watch grossly negligent conduct occurring and shrug it off.

Gross negligence, as that concept is used in the Workers' Compensation Act,[61] is defined in section 41.001(7)(B) of the Civil Practice and Remedies Code as "an act or omission: (i) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." [62] While the definition of "gross negligence" given in the jury charge did not use these words, it did involve the same considerations more clearly expressed in the statute. As we explained in *Transportation Insurance Co. v. Moriel,* gross negligence has an objective and a subjective component.[63] Objectively, an actor must be confronted by an extreme risk—one that anyone in his position would recognize as both extremely likely and extremely serious.[64] Subjectively, the actor must actually be aware of the risk and consciously indifferent to the consequences.[65]

In sum, the policies underlying section 414 support holding an employer liable for gross negligence in failing to exercise his retained right of control over an indepen-

---

**60.** Tex. Lab.Code § 408.001(b).

**61.** Tex. Lab.Code § 408.001(c).

**62.** Tex. Civ. Prac. & Rem.Code § 41.001(7)(B).

**63.** 879 S.W.2d 10, 21–22 (Tex.1994).

**64.** *Id.* at 22.

**65.** *Id.*

dent contractor to prevent the contractor from causing the death of its own employee by its own gross negligence. When the contractor has created an extremely likely and serious risk of harm to its employee and is aware that it has done so, and the employer is himself aware of the risk and consciously indifferent to it, there is nothing unreasonable in imposing liability on the employer. While the duty under section 414 may well be broader than this, it certainly extends this far.

## III

LLC argues that even if it had such a duty, there is no evidence that its negligence caused Harrison's death or that it was grossly negligent. I agree with the Court that the evidence supports the jury's verdict.

LLC retained substantial control over safety on the Methodist Hospital construction site. Its contract with the Hospital obligated it to do so, and its contract with KK Glass shows that it did. The safety requirements LLC contractually imposed on KK Glass are very detailed, and had KK Glass complied with them, Harrison would not have been killed. Moreover, LLC frankly acknowledged that its goal, which was wholly salutary, was to do what it could to ensure safety at the worksite. LLC could have excluded from the jobsite any KK Glass employee who failed to comply with LLC's safety requirements. In short, LLC contractually retained and actually exercised such control over KK Glass's work that it owed a duty under section 414 of the *Restatement*, recognized in *Redinger*, to use ordinary care to prevent injury to "others". LLC complains that the jury should have been asked whether it retained control over the specific injury-causing activity, but given the evidence, any error was plainly harmless.

Evidence that LLC retained control over job safety is necessary but not sufficient to hold LLC liable for Harrison's death. There is other evidence, however, that is sufficient. LLC approved KK Glass's use of lanyards to prevent its employees from falling, equipment that was being used by another subcontractor, which use an OSHA inspector had viewed without objection. At most, the design and use of the lanyard system was negligent; it was not grossly negligent. On the contrary, had the lanyard hooked to Harrison's safety belt been attached to an interior girder, as it should have been, he could not have fallen as he did. But it is not clear from the evidence that Harrison's fall was caused by the lanyard system. He may have fallen from the bosun's chair, and its use was an entirely different matter. No reasonable person in the position of KK Glass's job supervisor or LLC's project superintendent could reasonably have thought that working on the side of a ten-story building suspended by a single rope attached to the roof was safe. The use of the bosun's chair was obvious to anyone in the building or on the ground, and several workers commented on how dangerous it was. There was abundant evidence from which the jury could have concluded, as they did, that LLC knew that the bosun's chair presented an extreme risk of harm. And if the risk was obvious to LLC, it was even more obvious to KK Glass. Thus, the evidence credited by the jury shows that LLC was grossly negligent in failing to prohibit KK Glass from using the bosun's chair as it did, which was itself grossly negligent. Evidence of LLC's gross negligence, together with evidence of its control over safety, is sufficient for liability under section 414.

\*　　\*　　\*　　\*　　\*　　\*

For these reasons, I join in affirming the lower courts' judgments. I end with

the observation with which I began: the Court does not reject the analysis of section 414 I have set out; it chooses merely to ignore the considerations I have set out because liability in this case is clear to us all. Future applications of the rule in section 414 must take into account the policies that support the rule.

Justice JEFFERSON, concurring.

I concur in the Court's judgment. I agree that the evidence supports liability here, but not for the reasons stated by the Court. LLC's approval of the ineffective fall-protection system is not "actual control" as defined by this Court in *Koch Refining Co. v. Chapa*, 11 S.W.3d 153 (Tex.1999)(discussing RESTATEMENT (SECOND) OF TORTS, § 414 cmt. c). As shown below, liability must be based on more than mere acquiescence or approval. I would affirm the judgment on the ground that LLC had a contractual right to compel compliance with safety standards, actually witnessed repeated and flagrant safety violations, and approved those repeated violations even as it enforced its own standards for its own employees.

The Court concludes there is more than a scintilla of evidence that LLC exercised actual control over KK Glass by assigning an employee to inspect the work area and by approving an ineffective fall-protection system. That conclusion is difficult to square with our opinion in *Koch Refining Co. v. Chapa*. In *Koch*, the premises owner, Koch Refining Company, stationed a safety employee on site with authority to intervene if a subcontractor's employee engaged in a dangerous activity. There was evidence that Koch's safety employee overheard a conversation in which the independent contractor instructed its employee to engage in an unsafe pipe-lifting maneuver.

Because the safety employee did nothing in response, the court of appeals held that "Koch's apparent acquiescence to the independent contractor's order to perform an unsafe operation was sufficient to compel Koch to take corrective action." *Id.* at 156–57 (quoting *Chapa v. Koch Refining Co.*, 985 S.W.2d 158, 162 (Tex.App.—Corpus Christi 1998)). We rejected that holding. We concluded that Koch's ability to intervene was not evidence that the subcontractor and its employees "were not free to do the work in their own way and is not evidence that Koch controlled the method of work or its operative details." *Koch*, 11 S.W.3d at 156. It appears, then, that LLC cannot be liable solely because it positioned an employee on the job site with inspection authority and approved KK Glass's dangerous conduct.

If, in this instance, liability cannot be based on actual control, we must determine whether there is some other basis for imposing liability. As Justice Hecht observes, LLC unquestionably retained a contractual right to enforce safety requirements. Although the Court concludes it need not reach the issue of control by contract, I believe the question of LLC's contractual right to control must be addressed. We have previously discussed circumstances under which a premises owner or general contractor has retained the right to compel compliance with safety measures. *See Tovar v. Amarillo Oil Co.*, 692 S.W.2d 469 (Tex.1985). In *Tovar*, the premises owner retained a contractual right to suspend its independent contractor's drilling operations "in the event of carelessness, inattention, or incompetency on the part of" that contractor. *Id.* at 470. We held that the oil company owed a duty to its independent contractor's employees when it became aware that the independent contractor was violating a specific,

critical safety provision in the drilling contract. *Id.*

*Tovar* does not discuss the policy considerations that favor permitting a general contractor to require all workers on a construction site to obey fundamental safety standards without thereby subjecting itself to liability for injuries to independent contractors' employees. A general contractor's promulgation and enforcement of such basic safety measures should not be sufficient, in itself, to impose liability for injuries to subcontractors' employees. Our tort system should not penalize a general contractor for insisting on compliance with basic safety standards. A general contractor is not "required to stand idly by while another is injured or killed in order to avoid liability. Nor do we believe that the liability rules contemplate putting those who employ independent contractors in that position." *Hoechst–Celanese Corp. v. Mendez*, 967 S.W.2d 354, 358 (Tex.1998) (quoting *Welch v. McDougal*, 876 S.W.2d 218, 224 (Tex.App.—Amarillo 1994, writ denied)). Similarly, suggesting, or even requiring, that a subcontractor meet minimal safety requirements should not amount to the sort of "control" sufficient to hold a general contractor liable for injuries to subcontractors' employees.

A different question is presented when the general contractor, who has contractual responsibility for general safety measures, permits its subcontractors to deviate routinely from the most elemental safety precautions. "[A]n employer who is aware that its contractor routinely ignores applicable federal guidelines and standard company policies related to safety may owe a duty to require corrective measures to be taken or to cancel the contract." *Hoechst–Celanese*, 967 S.W.2d at 357. I would affirm the judgment on this basis.

LLC's liability stems from its right to compel compliance with standard safety measures coupled with its tacit approval of the subcontractor's patently treacherous operations. LLC was fully aware that KK Glass employees, and Harrison in particular, used a bosun's chair to perform caulking work on the exterior of a multistory building. LLC knew that the chair had no independent lifeline and that employees would have only their grasp of the rope to prevent a fatal fall. LLC employees testified that they saw Harrison using the bosun's chair less than 30 minutes prior to his fall, with one untethered end of his lanyard looped around his neck. At no time did LLC discourage use of the bosun's chair in this fashion. Moreover, the jury heard testimony that although LLC was careful to enforce fall-protection systems for its own employees, it remained silent while watching KK Glass employees dangle precariously from the tenth floor.

LLC is liable not merely because it adopted a general safety program or possessed a contractual right to expel subcontractors who routinely flout general safety standards, but also because LLC endorsed KK Glass's repeated use of an obviously hazardous activity. Thus, although I cannot join the Court's opinion with respect to actual control, I agree with the Court's disposition and concur in the judgment.