Opinion issued March 10, 2005







     





In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01211-CV




BUTTERFLY KISSES FOUR, INC., Appellant

V.

ERIC SCHEFFEY AND KENDALL SCHEFFEY, Appellees




On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2001-38151




MEMORANDUM OPINION
          This is an appeal from a jury’s finding that appellees, Eric and Kendall
Scheffey, owned the home that had been rented by appellant, Butterfly Kisses Four,
Inc. (BK4), and that was occupied by BK4’s president, Victor Brook, and his family. 
The trial court awarded title to the Scheffeys; nullified BK4’s warranty deed; issued
a writ of possession in the Scheffeys’ favor; enjoined BK4 from interfering with that
possession; awarded the Scheffeys $227,600 in damages and $399,401.16 in
attorney’s fees; and awarded the Scheffeys $200,000 in bonds posted by BK4 against
temporary orders it had obtained before trial. 
          In six issues, BK4 contends (1) it owns the property as a matter of law; (2) the
evidence was legally and factually insufficient to support the jury’s findings that the
Scheffeys owned the property, that any breach by BK4 of the residential contract was
excused, or that the Scheffeys sustained $227,600 in damages; (3) the Scheffeys were
not entitled to retain BK4’s $450,000 down payment; (4) the liquidated damages
provision of the residential contract precluded the award of damages; (5) the warranty
deed filed by BK4 was effectively delivered as a matter of law; and (6) the award of
attorney’s fees should be vacated, the writ of possession dissolved, and the injunctive
relief reinstated. We affirm.
Facts
          BK4 and the Scheffeys entered into a residential property sales contract in
November 1999. BK4 provided a $25,000 earnest money deposit against the $2.65
million purchase price. When BK4 could not close the transaction as scheduled in
January 2000, the parties (1) extended the closing date to July 31, 2000, (2) pre-signed the closing documents, and (3) executed an agreement to hold the closing
documents until BK4 had obtained financing. The “Agreement to Hold Closing
Documents” made conclusion of the sale contingent on recording of the sale, which
triggered BK4’s responsibilities under the “All-Inclusive Promissory Note” and “All-Inclusive Deed of Trust & Security Agreement.”
          In the interim, BK4 tendered an additional $425,00 in cash to be applied to the
purchase price (resulting in a combined earnest money/down payment total of
$450,000) and agreed to lease the property from the Scheffeys for $14,214.16 per
month. BK4’s bank returned for insufficient funds the first rent check BK4 tendered
to the Scheffeys, and BK4 missed all or part of three other rent payments. 
          The parties entered into an “as-is” sales contract. BK4 did not hire an inspector
to assess the home’s condition before or after signing the contract. Brook testified
that, when his family moved into the home, they discovered that a number of items
had been removed, including a sophisticated whole-house audio system, several
refrigerators, and some artwork. He further testified that some of the fixtures were
not working properly, there was damage to floor and wall surfaces where artwork had
been removed, and there was a pre-existing plumbing problem that further damaged
the floors. Although BK4 contends that the Scheffeys made no disclosures regarding
the property condition, the record does not support this contention. Defects that were
noted in the seller’s disclosure included a previous termite infestation and an
insurance claim that was filed because “toilet overflow damaged hardwood floor in
entry.” The Scheffeys contest BK4’s allegations as to other defects and failures to
disclose, noting that some of the complained-of “missing” items were expressly
designated in the sales contract as exclusions from the sale. 
          Although BK4 informed the Scheffeys in July 2000 that it had obtained
financing to buy the home, approval for the financing self-terminated before the
closing date. Based on the terms of the purchase agreement, BK4 became a holdover
month-to-month tenant when the lease agreement expired after the scheduled date of
the second closing passed on July 31, 2000 without the sale’s being finalized.


 BK4
never obtained financing from any other source, the parties never closed the sale of
the house, and BK4 never tendered payment as required by the sales contract. 
          In October 2000, the Scheffeys notified BK4 that they were terminating the
lease and asked the Brook family to vacate the house, but the family refused to vacate
the premises. The Scheffeys filed a forcible entry and detainer suit, and the justice
court issued a writ of possession. BK4 obtained a temporary restraining order against
enforcement of the writ, posted a $200,000 bond pending trial, and counterclaimed
for breach of contract, tortious interference, conversion, and wrongful eviction.
          Despite not having financing in place, BK4 recorded the warranty deed in
February 2001, after litigation commenced. Shortly thereafter, BK4 filed for
bankruptcy, temporarily staying all judicial proceedings, but the trial court lifted the
stay against the Scheffeys’ suit. 
          After a trial in which the jury answered all questions in the Scheffeys’ favor,
the trial court dissolved the temporary injunction, awarded title to the Scheffeys,
nullified BK4’s warranty deed, issued a writ of possession in the Scheffeys’ favor and
enjoined BK4 from interfering with that possession, awarded the Scheffeys $227,600
in damages and $399,401.16 in attorney’s fees, and awarded the Scheffeys the
$200,000 BK4 had posted in bonds. The trial court denied BK4’s motion for new
trial, and this appeal ensued.
Sufficiency of the Evidence
          In issues one, five, and six, BK4 challenges the legal and factual sufficiency
of the evidence to support the jury’s findings that the Scheffeys owned the property,
that BK4’s breach of the contract was not excused, and that the Scheffeys sustained
damages of $227,600. In issue two, BK4 contends that it became the owner of the
property as a matter of law when it recorded the warranty deed. We address issue two
in our review of the evidence concerning ownership of the property.
          Standard of Review
          In a legal-sufficiency review, we review the evidence in a light that tends to
support the finding of the disputed facts and disregard all evidence and inferences to
the contrary. Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001). 
If more than a scintilla of evidence exists, it is legally sufficient. Id. More than a
scintilla of evidence exists if the evidence furnishes some reasonable basis for
differing conclusions by reasonable minds about a vital fact’s existence. Id. at
782-83. 
          In reviewing a factual-sufficiency point, we consider, weigh, and examine all
the evidence presented at trial and will set aside a finding for factual insufficiency
only if the evidence is so “contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust.” Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).
          Evidence Regarding Who Owned the Property
          BK4’s argument that it owned the property as a matter of law is based on its
having recorded the warranty deed in February 2001. It argues that, because the
closing documents were pre-signed and the contract permitted BK4 to record the deed
when financing was approved, and BK4 recorded the deed after financing was
approved, it established a prima facie case of delivery and the presumption that the
Scheffeys intended to convey the property. See Stout v. Clayton, 674 S.W.2d 82, 85
(Tex. App.—San Antonio 1984, writ ref’d n.r.e.) (holding that delivery occurs when
grantor places deed within control of grantee and intends it become operative as a
conveyance). 
          BK4 did not record the deed, however, until over six months had elapsed after
the sale failed to close and BK4 became a tenant of the Scheffeys. At the time BK4
recorded the deed, the financing it claimed to have obtained was no longer approved.


 
By recording the deed after its financing had failed and the sale had failed to close,
BK4 breached the express terms of the “Agreement to Hold Closing Documents,”
which (1) provided that BK4 not register the deed until its financing “toward the
payoff of the Property” had been approved; (2) recited BK4’s acknowledgment that
improper recording of the deed would violate the due on sale clauses contained in the
Deeds of Trust; and (3) stated that BK4 assumed “all risks of violating such due on
sale clause.” Due-on-sale clauses in a contract that are broad but not ambiguous are
enforced precisely as written. See Crestview, Ltd. v. Foremost Ins. Co., 621 S.W.2d
816, 820 (Tex. Civ. App.—Austin 1981 writ ref’d n.r.e.). Thus, BK4 was in breach.
          All of the documents relevant to the sale and lease of the home were admitted
as exhibits for the jury’s review. While it is not disputed that BK4 paid the Scheffeys
$425,000, the record shows that this was simply a down payment on the full purchase
price of $2.6 million for the home. The $425,000 was tendered as consideration for
an amendment to the purchase contract that allowed BK4 additional time to obtain
financing and close the sale; it was not the full purchase price. In addition, the record
reflects that the Scheffeys expressly retained a vendor’s lien on the property. Because
they retained a vendor’s lien, and BK4 did not pay the full purchase price for the
home, BK4 cannot now contest the Scheffeys’ title. See Adams v. Adams, 352
S.W.2d 540, 543 (Tex. Civ. App.—Dallas 1961, no writ) (buyer of property cannot
contest vendor’s title when purchase price has not been paid). 
          BK4’s recording of the deed was inconsistent with the Scheffeys’ evidence of
ownership, but the jury is the sole judge of the credibility of the witnesses and the
weight to be given to their testimony. Jones v. Tarrant Util. Co., 638 S.W.2d 862,
866 (Tex. 1982). The trier of fact may resolve conflicts and inconsistencies in the
testimony of any one witness as well as the conflicting testimony of different
witnesses. Webb v. Jorns, 488 S.W.2d 407, 411 (Tex. 1972). This Court cannot
substitute its judgment or its opinion for that of the jury. Lofton v. Tex. Brine Corp.,
720 S.W.2d 804, 805 (Tex. 1986). Evidently, the jury believed the Scheffeys’ version
of the events, not BK4’s.
          When we view the evidence in the light most favorable to the jury’s finding
that the Scheffeys owned the property, it is legally sufficient to sustain the finding. 
When we view all of the evidence presented in a neutral light, we cannot say that the
jury’s finding was so contrary to the evidence as to be clearly wrong and unjust.
          We hold the evidence was sufficient to sustain the jury’s finding that the
Scheffeys owned the home.
          We overrule the first and second issues.
Excuse for Breach of Contract
          In its fifth issue, BK4 contends that, because of the family’s complaints about
the home’s condition and the disclosures the Scheffeys allegedly failed to make, any
breach of contract on its part in failing to buy the home or in tendering the full
amount of rent owed was excused. BK4 offers no legal authority standing for the
proposition that its breach of contract was excused. BK4 relies solely on one clause
of the sales contract, which provides, “If Seller fails to comply with the contract . .
. Seller will be in default.” BK4 argues that the Scheffeys failed to comply because
they did not disclose known defects in the house. However, we have already
determined that the record contains evidence from which the jury could reasonably
have found that the Scheffeys did not fail to disclose the defects complained of.
          Generally, a prerequisite to the remedy of excuse of performance is that
covenants in the contract must be mutually dependent promises and there has been
a prior breach by one party. See Green Int’l, Inc. v. Solis, 951 S.W.2d 384, 389 (Tex.
1997) (citing Hanks v. GAB Bus. Servs., Inc., 644 S.W.2d 707, 709 (Tex. 1982);
Hollander v. Capon, 853 S.W.2d 723, 725 (Tex. App.—Houston [1st Dist.] 1993,
writ denied). BK4 does not identify what these mutually dependent promises were. 
In addition, the evidence does not support BK4’s allegation that the home was in poor
condition.
          Brook testified that, when his family moved into the home, they were not
anticipating any problems because the Scheffeys had not disclosed any problems, but
that they discovered that a number of items had been removed, some fixtures did not
work properly, there was damage to the sheetrock and wood floors, and there was a
recurring plumbing problem. Eric Scheffey testified that the seller’s disclosure form
that he filled out was entirely accurate at the time he completed it. Kendall Scheffey,
when asked if she had ever advised the Brooks not to inspect the house, lied about the
house, or misstated the condition of the house, answered each time, “Absolutely not.” 
The lease agreement between the parties provided that “Lessee, at Lessees cost and
expense, shall be responsible for maintaining the Property.” The Scheffeys replaced
the boiler, but did not make any other repairs. Kendall Scheffey testified that, during
a conversation about the condition of the house when she asked Kathy Brook why she
had not had the house inspected, Kathy told her, “This is our business. We’re in real
estate. We have a whole team of people that fix apartments and things for us.”
          In support of their argument that the house was defective, thus that any breach
was excused, BK4 contends that the Scheffeys’ architect confirmed there were
structural defects in the house. The record does not truly support this contention. 
Although the architect testified there was a “little bit of a slope” to the floors of a
home addition, he also testified that he saw no evidence of any foundation problems
such as cracked sheetrock or cracked plate glass windows The only expert testimony
offered regarding the condition of the property was from this architect. The record
does not contain any invoices for repairs made either by the Brook family or by
contractors they hired, and there was no testimony regarding the cost of any repairs
made. 
          The jury viewed two undated sets of pictures of the home’s interior and
exterior. The first set, taken while the home was on the market, shows a house in
what appears to be immaculate condition. The second set, taken by the Brooks at a
time that is not apparent from the pictures or the record, shows a house in
deteriorating condition. Based on the lease agreement, it was the Brook family, not
the Scheffeys, who were responsible for the home’s maintenance after they moved in,
and there is simply no way, without dated pictures, to determine when the house
deteriorated or who was responsible. Thus, there is nothing in the pictures that would
have compelled the jury to find that the house was in a deteriorated condition when
the Brooks moved in and that the Scheffeys were responsible for that condition.


 
          The foregoing evidence, viewed in the light most favorable to the jury’s finding
that the breach of contract was not excused, is legally sufficient to sustain the finding. 
When we view all of the evidence presented in a neutral light, we cannot say that the
jury’s finding was so contrary to the evidence as to be clearly wrong and unjust. 
Accordingly, we hold that the evidence was factually sufficient to sustain the jury’s
finding that BK4’s breach of contract was not excused.
          We overrule the fifth issue.
          Damages
          In its sixth issue, BK4 contends the evidence was legally and factually
insufficient to support the jury’s finding that the Scheffeys sustained $227,600 in
damages. We apply the foregoing standards of review of legal and factual sufficiency
challenges.
          As a preliminary matter, we reject BK4’s contention that the jury’s finding on
damages was based on an incorrect assumption that the lease agreement was effective
from January 2001 through July 2002. BK4 argues that “all lease payments and
obligations” were “null and void” after it recorded the warranty deed in February
2001, and it concludes that it owed the Scheffeys nothing after that date as a matter
of law, but it offers no legal authority to support this argument. We have already
concluded that BK4’s recording the deed did not convey ownership of the home to
BK4, as none of the material terms of the contract had been met. In addition, because
BK4 continued to occupy the property as a month-to-month tenant until July 2002,
the lease agreement remained in effect well beyond the time the deed was recorded
in February 2001. 
          The unrebutted testimony of the accountant was that the Scheffeys had
sustained damages in the amount of $230,715.95 from BK4’s breach of the sales and
lease agreements. These damages accrued from unpaid rents ($33,560.28), late fees
assessed by lenders ($5138.70), unpaid utilities ($4,146.15), unpaid property taxes
($187,379.31), legal fees ($16,269.83), and accounting fees ($17,251.63). As the
record shows that this was the only evidence presented regarding damages, we
conclude that the evidence was both legally and factually sufficient to sustain the
jury’s award.
          We overrule the sixth issue.
Retention of Down Payment & Liquidated Damages
          In its third issue, BK4 contends that because the Scheffeys did not comply with
the sales contract they were not entitled to retain the $450,000 earnest money BK4
tendered to them. In its fourth issue, BK4 argues in the alternative that the liquidated
damages portion of the contract precluded the trial court’s award of additional
damages beyond this $450,000.
          The sales contract provided “[I]f Buyer fails to comply with this contract,
Buyer will be in default and Seller may . . . terminate this contract and receive the
earnest money as liquidated damages.” We have held that the Scheffeys own the
home, and that BK4’s failure to comply with the contract was not excused. The terms
of the contract entitled the Scheffeys to retain the $450,000 earnest money if BK4
failed to comply. BK4 did not close the sale of the house; thus, it failed to comply
with the terms of the contract, and the Scheffeys were entitled to keep the $450,000.
          The Scheffeys contend that BK4 waived its complaint that the liquidated
damages portion of the contract precluded the award of further damages because BK4
did not raise the issue at trial or seek a jury instruction on whether retention of the
$450,000 precluded other damages. We agree. To preserve error, a party must make
a timely objection to the trial court. Tex. R. App. P. 33.1. Moreover, even if BK4
had properly preserved this issue, the trial court did not err.
          The $227,600 in damages sustained by the Scheffeys and awarded by the jury
in addition to the liquidated damages of $450,000 for breach of the sales contract
were related not to breach of the sales contract, but to breach of the lease agreement. 
When a plaintiff pleads alternate theories of liability, judgment awarding damages on
more than one theory may stand if the theories of liability arise from separate and
distinct injuries and separate and distinct damage findings are entered on each theory
of liability. See Birchfield v. Texarkana Mem’l Hosp., 747 S.W.2d 361, 367 (Tex.
1987); Baribeau v. Gustafson, 107 S.W.3d 52, 60 (Tex. App.—San Antonio 2003,
pet. denied). Therefore, the Scheffeys were entitled not only to the liquidated
damages from BK4’s default on the sales contract, but also to the damages they
sustained as a result of BK4’s breach of the lease agreement. 
          We overrule the third and fourth issues.
Recovery of Attorney’s Fees & Recovery on Bonds
          BK4 argues that the award of attorney’s fees was improper, noting that the
Scheffeys had to prevail on a breach of contract claim to be entitled to attorney’s fees. 
See Green Int’l v. Solis, 951 S.W.2d 384, 390 (Tex. 1984). The Scheffeys prevailed
on their breach of contract claim; thus, the award of attorney’s fees was proper.
          BK4 also argues that the trial court erred in permitting the Scheffeys to recover
against the $50,000 and $150,000 bonds BK4 posted in compliance with the
temporary restraining order and temporary injunctive relief it obtained. Again, the
argument is based on a premise we have rejected—that the Scheffeys did not own the
property. The bonds were posted to stay the writ of possession and injunctive relief
the Scheffeys had obtained from the trial court so as to permit the Brook family to
continue to live in the house. 
          A person who wrongfully obtains an injunction is liable for damages caused
by the issuance of the order. DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 685
(Tex. 1990). Significantly, BK4 conceded at trial that its claim of ownership
contradicted the various agreements between the parties. The face of the bonds
specified that if they were dissolved in whole or in part the Scheffeys were entitled
to recover the amount of the bonds. In paragraph 13 of its nunc pro tunc judgment,
the trial court dissolved the temporary injunction and awarded the Scheffeys
$200,000—the face amount of the bonds—as credit against the damages awarded in
the judgment. We hold that the trial court did not err in so doing.
          Finally, BK4 asks this court to reverse those portions of the judgment granting
the Scheffeys a writ of possession and permanent injunctive relief. Based on our
disposition of all previous issues, we overrule this prayer.
Conclusion
          We affirm the trial court’s judgment.



                                                   Evelyn V. Keyes
                                                   Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.