Opinion filed October 9, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed October 9, 2008

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00370-CV

                                                    __________

 

                                       DENNIS VERNER, Appellant

 

                                                             V.

 

PATTERSON-UTI ENERGY, INC.; PATTERSON-UTI DRILLING
COMPANY; AND PATTERSON-UTI DRILLING COMPANY WEST LP, LLLP, Appellees

 



 

                                             On Appeal
from the 385th District Court

                                                           Midland
County, Texas

                                                   Trial
Court Cause No. CV46255



                                             M
E M O R A N D U M  O P I N I O N

This
case arises from an on-the-job injury.  Dennis Verner appeals from the trial
court=s take-nothing
summary judgment in favor of Patterson-UTI Energy, Inc.; Patterson-UTI Drilling
Company; and Patterson-UTI Drilling Company West LP, LLLP on his claims.  We
affirm.

                                                               Background
Facts








On
June 4, 2003, Verner was injured in an oilfield accident.  He claimed that his
injury resulted from the improper operation of a defective top drive motor. 
Following the accident, Verner brought a negligence suit against the following
defendants: (1) National Oilwell, Inc.; (2) Pure Resources, Inc., d/b/a Texas
Pure Resources, Inc.; (3) Pure Resources I, Inc.; (4) Patterson-UTI Energy,
Inc.; (5) Patterson-UTI Drilling Company; and (6) Patterson-UTI Drilling
Company West LP, LLLP.  He alleged that, at the time of the accident, he was
working for Patterson-UTI Drilling Company West LP, LLLP (Patterson West),
which was conducting drilling operations at Rig No. 488.  Verner alleged
that the defendants committed negligence in connection with the operation of
the top drive unit.

The
three Patterson defendants filed a traditional motion for summary judgment. 
They moved for summary judgment on the following grounds: (1) that the
exclusive remedy provision of the Texas Workers=
Compensation Act, Tex. Lab. Code Ann.
' 408.001 (Vernon 2006),
barred Verner=s claims
against Patterson West and (2) that Patterson-UTI Drilling Company (Patterson
Drilling) and Patterson-UTI Energy, Inc. (Patterson Energy) did not owe a duty
to Verner.  Patterson Drilling and Patterson Energy also filed a no-evidence
motion for summary judgment on a lack of duty ground.

Verner
filed a response to the traditional and no-evidence motions for summary
judgment, and the Patterson defendants filed a reply to Verner=s response.  Following a
hearing, the trial court entered an order granting summary judgment to the
Patterson defendants.  The trial court=s
order did not specify the ground or grounds relied on for its ruling.  The
trial court severed Verner=s
claims against the Patterson defendants from the remainder of the suit, and the
summary judgment became final and appealable.

                                                                 Issues
on Appeal

Verner
presents four issues for review.  In his first issue, he contends that the
trial court erred in sustaining the Patterson defendants= objections to the exhibits that were attached
to his attorney=s
affidavit.  In his second and third issues, he asserts that the trial court
erred in granting summary judgment to Patterson Drilling and Patterson Energy
because (1) there was more than a scintilla of evidence that they were
contractors under the daywork drilling contract and (2) the daywork drilling
contract and the corporate scheme of the Patterson entities created a duty to
those, like Verner, who worked on the rig.  In his fourth issue, Verner asserts
that the trial court erred in granting traditional summary judgment to
Patterson West because a fact question existed as to who was his employer at
the time of the accident.








                                                              Standard
of Review

Where,
as here, a trial court=s
order granting summary judgment does not specify the ground or grounds relied
upon for its ruling, summary judgment will be affirmed on appeal if any of the
summary judgment grounds advanced by the movant are meritorious.  Dow Chem.
Co. v. Francis, 46 S.W.3d 237, 242 (Tex. 2001).  We will begin our analysis
by reviewing the trial court=s
summary judgment under the standard of review for traditional summary
judgments.  A trial court must grant a traditional motion for summary judgment
if the moving party establishes that no genuine issue of material fact exists
and that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c); Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991).  In order for a
defendant to be entitled to summary judgment, it must either disprove an
element of each cause of action or establish an affirmative defense as a matter
of law.  Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  Once the
movant establishes a right to summary judgment, the nonmovant must come forward
with evidence or law that precludes summary judgment.  City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979).  When
reviewing a traditional summary judgment, the appellate court considers all the
evidence and takes as true evidence favorable to the nonmovant.  Am. Tobacco
Co., 951 S.W.2d at 425; Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548-49 (Tex. 1985).  The appellate court Amust
consider whether reasonable and fair-minded jurors could differ in their
conclusions in light of all of the evidence presented@ and may not ignore Aundisputed evidence in the record that cannot
be disregarded.@  Goodyear
Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755, 757 (Tex. 2007).  

Summary
Judgment Evidence

The
Patterson defendants presented two affidavits from Mark Cullifer, the vice
president of Patterson UTI Drilling Company, LLC, and an affidavit from Steve
J. McCoy, the vice president  of marketing at Patterson-UTI Drilling Company,
LLC, in support of their traditional motion for summary judgment.  They also
presented excerpts from Verner=s
deposition testimony and exhibits from Verner=s
deposition.  Verner presented Cullifer=s
deposition testimony, as well as the exhibits to Cullifer=s deposition, and an
affidavit from his attorney, Mark A. Cevallos, in opposition to the Patterson
defendants= motions
for summary judgment.








                                         The
Exclusive Remedy Provision of the TWCA

In
his fourth issue, Verner contends that a fact issue existed as to who employed
him at the time of the accident.  The TWCA provides that A[r]ecovery of workers= compensation benefits is
the exclusive remedy of an employee covered by workers= compensation insurance coverage . . . against
the employer . . . for . . . a work-related injury sustained by the employee.@  Section 408.001(a).  The
exclusive remedy provision of the TWCA is an affirmative defense.  Morales
v. Martin Res., Inc., 183 S.W.3d 469, 471 (Tex. App.CEastland 2005, no pet.).  To establish the
exclusive remedy defense, a defendant must show (1) that it was the plaintiff=s employer within the
meaning of the TWCA and (2) that it was covered by a workers= compensation insurance
policy.  W. Steel Co. v. Altenburg, 206 S.W.3d 121, 123-24 (Tex. 2006). 


Patterson
West pleaded the exclusive remedy provision as an affirmative defense.  In the
summary judgment context, Patterson West had the burden of proving its
exclusive remedy affirmative defense as a matter of law.  Am. Tobacco Co.,
951 S.W.2d at 425; Sci. Spectrum, Inc., 941 S.W.2d at 911.  Cullifer
stated in his affidavits that, at the time of the accident, Verner was employed
by, and in the course and scope of his employment with, Patterson West.  He
also stated that Patterson West provided workers=
compensation insurance to its employees and that Verner had applied for and had
received workers=
compensation benefits from Patterson West=s
workers= compensation
insurance carrier, Liberty Insurance Corporation.  Cullifer attached exhibits
to his affidavits showing that Patterson West had workers= compensation insurance on
the date of Verner=s
accident.








Verner
alleged in his petition that he was working for Patterson West at the time of
the accident.  In addition, he testified that he worked for APatterson-UTI Drilling West
LP.@  His paycheck
stubs showed that his employer was APatterson-UTI
Drilling West LP, LLLP,@
and his W-2 showed that his employer was APatterson-UTI
Drilling West LP, a limited partnership.@ 
Verner also testified that he had received workers= compensation benefits as a result of the
accident.  Although the TWCC records attached as exhibits to Cevallos=s affidavit showed some
confusion on the part of the TWCC and Liberty Insurance Corporation as to the
name of Verner=s
employer, Cullifer presented detailed evidence establishing that Patterson West
was Verner=s employer
at the time of the accident.  Summary judgment based on the uncontroverted
affidavit of an interested witness is proper if the evidence is clear,
positive, direct, otherwise credible, and free from contradictions and
inconsistencies and could have been readily controverted.  Rule 166a(c);
Trico Techs. Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997).   ACould have been readily
controverted@ does not
mean that the summary judgment evidence could have been easily and conveniently
rebutted but, rather, indicates that the testimony could have been effectively
countered by opposing evidence.  Trico Techs. Corp., 949 S.W.2d 310. 
Cullifer=s affidavits
were sufficient to establish Patterson West=s
exclusive remedy affirmative defense as a matter of law.  Verner=s deposition testimony
provided additional evidence that he was employed by Patterson West.     

The
trial court did not err in granting summary judgment to Patterson West on the
ground that the exclusive remedy provision in the TWCA barred Verner=s claims against it.  We
overrule Verner=s
fourth issue.  

In
his first issue, Verner contends that the trial court erred by sustaining the
Patterson defendants=
objections to the exhibits that were attached to Cevallos=s affidavit.  We need not
address whether the trial court erred in sustaining the objections because,
even assuming that the affidavit and exhibits were competent summary judgment
evidence, they failed to raise a fact issue on the employment issue.  We overrule
Verner=s first
issue.     

                                                                     Duty
Issues

In
his second issue, Verner contends that the trial court erred in granting
summary judgment to Patterson Drilling and Patterson Energy because fact issues
existed as to whether they were the contractors under the subject daywork
drilling contract.  In his third issue, Verner asserts that the drilling
contract and Patterson=s
Acorporate scheme@ created a duty to him.  To
establish negligence, the plaintiff must produce evidence of a legal duty owed
by the defendant to the plaintiff, a breach of that duty, and damages
proximately caused by that breach.  Lee Lewis Constr., Inc. v. Harrison,
70 S.W.3d 778, 782 (Tex. 2001).  Whether a duty exists is a threshold question
of law; liability cannot be imposed if no duty exists.  Kroger Co. v. Elwood,
197 S.W.3d 793, 794 (Tex. 2006).








A
daywork drilling contract covered the operations on Rig No. 488 at the time of
the accident.  In the contract, APatterson-UTI
Drilling Co.@ was
identified as the contractor, and Pure Resources, LP, was identified as the
operator.  The signature lines in the contract indicate that it was accepted on
January 6, 2003, by APatterson-UTI
Drilling Co., a limited partnership@
as contractor, by the signature of Steve J. McCoy, as vice president of
marketing.    

Cullifer
and McCoy both explained in their affidavits that the company names listed in
the contract B APatterson-UTI Drilling Co.@ and APatterson-UTI Drilling Co.,
a limited partnership@
B were mistakenly placed
in the contract and did not correctly identify any entities that were in
business in 2003.  Cullifer stated the following facts in his affidavits: (1)
that, in 2003, no entity named APatterson-UTI
Drilling Company,@ APatterson-UTI Drilling Co.,@ or APatterson-UTI Drilling Co., a limited
partnership@ existed;
(2) that, in 2003, a company named APatterson-UTI
Drilling Company LP, LLLP,@
which was a Delaware limited partnership, existed; (3) that Patterson-UTI
Drilling Company LP, LLLP was the limited partner and 99% owner of Patterson
West; (4) that Patterson-UTI Drilling Company LP, LLLP did not participate in
the management or the day-to-day drilling operations of Patterson West; (5)
that, at that time, APatterson
(GP2) LLC,@ which was
a Delaware limited liability company, was the general partner and 1% owner of
Patterson West; (6) that Patterson (GP2) LLC did not participate in the
management or the day-to-day drilling operations of Patterson West;  (7) that
Patterson West owned, operated, and maintained Rig No. 488; and (8) that no
other Patterson entity retained or exercised any control over the operation or
maintenance of the rig or equipment being used on the rig.

McCoy
stated the following facts in his affidavit: (1) that he accepted the contract
on January 6, 2003; (2) that, at that time, he was employed by Patterson
West and was not employed by, or an officer of, any other Patterson entity; (3)
that, at the time he executed the contract, he knew the contract would be
performed by Patterson West, using only its employees and equipment; (4) that
he should have executed the contract as an authorized agent on behalf of
Patterson West; (5) that the contract should have identified the contractor as
Patterson West; and (6) that Patterson West performed the contract.

Cullifer=s and McCoy=s affidavits were
sufficient to establish that the names APatterson-UTI
Drilling Co.@ and APatterson-UTI Drilling Co.,
a limited partnership@
were placed in the contract by mistake and that Patterson West owned, operated,
and controlled Rig No. 488.  There was no summary judgment evidence that any
Patterson entity other than Patterson West actually controlled or had a right
to control the operation of the rig.    








Cullifer
explained in detail in his affidavits the corporate structure of the Patterson
entities.  He stated the following facts, among others:  (1) that, during the
time period in question, Patterson Energy did not control the drilling
operations of any Patterson entity; (2) that Patterson Energy did not own,
operate, or maintain Rig No. 488; and (3) that Patterson Energy did not employ,
supervise, or control any of the employees who worked for Patterson West on Rig
No. 488.  Cullifer explained that Patterson Energy owned a number of subsidiary
Patterson entities and that Patterson Energy=s
subsidiaries Awere
maintained as separate entities, with the appropriate formalities.@  A flow chart showing
Patterson=s subsidiary
structure, as of August 19, 2003, was attached as an exhibit to Cullifer=s deposition.  Cullifer=s deposition testimony
about the Patterson entities=
corporate structure was consistent with the facts stated in his affidavits.    

Cullifer=s affidavits established
that Patterson Energy was a separate legal entity from Patterson West and that
Patterson Energy did not control or have a right to control the operations on
Rig No. 488.  Verner contends that the Acorporate
scheme@ of the
Patterson entities created a Asham.@  However, Cullifer stated
that the Patterson entities in question were maintained as separate entities
and followed the appropriate formalities.  Verner did not present any summary
judgment evidence to the contrary.

The
summary judgment evidence established that Patterson Drilling and Patterson
Energy did not owe a duty to Verner.  The trial court did not err in granting a
traditional summary judgment to Patterson Drilling and Patterson Energy.  We
overrule Verner=s
second and third issues.

                                                               This
Court=s
Ruling

We
affirm the judgment of the trial court.

 

 

TERRY McCALL

JUSTICE 

 

October 9, 2008

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.