**Opinion filed October 9, 2008**



In The

# Eleventh Court of Appeals

_____

### No. 11-07-00370-CV

_____

## DENNIS VERNER, Appellant

## V.

## PATTERSON-UTI ENERGY, INC.; PATTERSON-UTI DRILLING COMPANY; AND PATTERSON-UTI DRILLING COMPANY WEST LP, LLLP, Appellees

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CV46255**

## M E M O R A N D U M   O P I N I O N

This case arises from an on-the-job injury. Dennis Verner appeals from the trial court's take-nothing summary judgment in favor of Patterson-UTI Energy, Inc.; Patterson-UTI Drilling Company; and Patterson-UTI Drilling Company West LP, LLLP on his claims. We affirm.

*Background Facts*

On June 4, 2003, Verner was injured in an oilfield accident. He claimed that his injury resulted from the improper operation of a defective top drive motor. Following the accident, Verner brought a negligence suit against the following defendants: (1) National Oilwell, Inc.; (2) Pure

Resources, Inc., d/b/a Texas Pure Resources, Inc.; (3) Pure Resources I, Inc.; (4) Patterson-UTI Energy, Inc.; (5) Patterson-UTI Drilling Company; and (6) Patterson-UTI Drilling Company West LP, LLLP. He alleged that, at the time of the accident, he was working for Patterson-UTI Drilling Company West LP, LLLP (Patterson West), which was conducting drilling operations at Rig No. 488. Verner alleged that the defendants committed negligence in connection with the operation of the top drive unit.

The three Patterson defendants filed a traditional motion for summary judgment. They moved for summary judgment on the following grounds: (1) that the exclusive remedy provision of the Texas Workers' Compensation Act, TEX. LAB. CODE ANN. § 408.001 (Vernon 2006), barred Verner's claims against Patterson West and (2) that Patterson-UTI Drilling Company (Patterson Drilling) and Patterson-UTI Energy, Inc. (Patterson Energy) did not owe a duty to Verner. Patterson Drilling and Patterson Energy also filed a no-evidence motion for summary judgment on a lack of duty ground.

Verner filed a response to the traditional and no-evidence motions for summary judgment, and the Patterson defendants filed a reply to Verner's response. Following a hearing, the trial court entered an order granting summary judgment to the Patterson defendants. The trial court's order did not specify the ground or grounds relied on for its ruling. The trial court severed Verner's claims against the Patterson defendants from the remainder of the suit, and the summary judgment became final and appealable.

*Issues on Appeal*

Verner presents four issues for review. In his first issue, he contends that the trial court erred in sustaining the Patterson defendants' objections to the exhibits that were attached to his attorney's affidavit. In his second and third issues, he asserts that the trial court erred in granting summary judgment to Patterson Drilling and Patterson Energy because (1) there was more than a scintilla of evidence that they were contractors under the daywork drilling contract and (2) the daywork drilling contract and the corporate scheme of the Patterson entities created a duty to those, like Verner, who worked on the rig. In his fourth issue, Verner asserts that the trial court erred in granting traditional summary judgment to Patterson West because a fact question existed as to who was his employer at the time of the accident.

2

*Standard of Review*

Where, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied upon for its ruling, summary judgment will be affirmed on appeal if any of the summary judgment grounds advanced by the movant are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We will begin our analysis by reviewing the trial court's summary judgment under the standard of review for traditional summary judgments. A trial court must grant a traditional motion for summary judgment if the moving party establishes that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). In order for a defendant to be entitled to summary judgment, it must either disprove an element of each cause of action or establish an affirmative defense as a matter of law. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997); *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Once the movant establishes a right to summary judgment, the nonmovant must come forward with evidence or law that precludes summary judgment. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). When reviewing a traditional summary judgment, the appellate court considers all the evidence and takes as true evidence favorable to the nonmovant. *Am. Tobacco Co.*, 951 S.W.2d at 425; *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). The appellate court "must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented" and may not ignore "undisputed evidence in the record that cannot be disregarded." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755, 757 (Tex. 2007).

*Summary Judgment Evidence*

The Patterson defendants presented two affidavits from Mark Cullifer, the vice president of Patterson UTI Drilling Company, LLC, and an affidavit from Steve J. McCoy, the vice president of marketing at Patterson-UTI Drilling Company, LLC, in support of their traditional motion for summary judgment. They also presented excerpts from Verner's deposition testimony and exhibits from Verner's deposition. Verner presented Cullifer's deposition testimony, as well as the exhibits to Cullifer's deposition, and an affidavit from his attorney, Mark A. Cevallos, in opposition to the Patterson defendants' motions for summary judgment.

*The Exclusive Remedy Provision of the TWCA*

In his fourth issue, Verner contends that a fact issue existed as to who employed him at the time of the accident. The TWCA provides that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer . . . for . . . a work-related injury sustained by the employee." Section 408.001(a). The exclusive remedy provision of the TWCA is an affirmative defense. *Morales v. Martin Res., Inc.*, 183 S.W.3d 469, 471 (Tex. App.—Eastland 2005, no pet.). To establish the exclusive remedy defense, a defendant must show (1) that it was the plaintiff's employer within the meaning of the TWCA and (2) that it was covered by a workers' compensation insurance policy. *W. Steel Co. v. Altenburg*, 206 S.W.3d 121, 123-24 (Tex. 2006).

Patterson West pleaded the exclusive remedy provision as an affirmative defense. In the summary judgment context, Patterson West had the burden of proving its exclusive remedy affirmative defense as a matter of law. *Am. Tobacco Co.*, 951 S.W.2d at 425; *Sci. Spectrum, Inc.*, 941 S.W.2d at 911. Cullifer stated in his affidavits that, at the time of the accident, Verner was employed by, and in the course and scope of his employment with, Patterson West. He also stated that Patterson West provided workers' compensation insurance to its employees and that Verner had applied for and had received workers' compensation benefits from Patterson West's workers' compensation insurance carrier, Liberty Insurance Corporation. Cullifer attached exhibits to his affidavits showing that Patterson West had workers' compensation insurance on the date of Verner's accident.

Verner alleged in his petition that he was working for Patterson West at the time of the accident. In addition, he testified that he worked for "Patterson-UTI Drilling West LP." His paycheck stubs showed that his employer was "Patterson-UTI Drilling West LP, LLLP," and his W-2 showed that his employer was "Patterson-UTI Drilling West LP, a limited partnership." Verner also testified that he had received workers' compensation benefits as a result of the accident. Although the TWCC records attached as exhibits to Cevallos's affidavit showed some confusion on the part of the TWCC and Liberty Insurance Corporation as to the name of Verner's employer, Cullifer presented detailed evidence establishing that Patterson West was Verner's employer at the time of the accident. Summary judgment based on the uncontroverted affidavit of an interested witness is

proper if the evidence is clear, positive, direct, otherwise credible, and free from contradictions and inconsistencies and could have been readily controverted. Rule 166a(c); *Trico Techs. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997). "Could have been readily controverted" does not mean that the summary judgment evidence could have been easily and conveniently rebutted but, rather, indicates that the testimony could have been effectively countered by opposing evidence. *Trico Techs. Corp.*, 949 S.W.2d 310. Cullifer's affidavits were sufficient to establish Patterson West's exclusive remedy affirmative defense as a matter of law. Verner's deposition testimony provided additional evidence that he was employed by Patterson West.

The trial court did not err in granting summary judgment to Patterson West on the ground that the exclusive remedy provision in the TWCA barred Verner's claims against it. We overrule Verner's fourth issue.

In his first issue, Verner contends that the trial court erred by sustaining the Patterson defendants' objections to the exhibits that were attached to Cevallos's affidavit. We need not address whether the trial court erred in sustaining the objections because, even assuming that the affidavit and exhibits were competent summary judgment evidence, they failed to raise a fact issue on the employment issue. We overrule Verner's first issue.

*Duty Issues*

In his second issue, Verner contends that the trial court erred in granting summary judgment to Patterson Drilling and Patterson Energy because fact issues existed as to whether they were the contractors under the subject daywork drilling contract. In his third issue, Verner asserts that the drilling contract and Patterson's "corporate scheme" created a duty to him. To establish negligence, the plaintiff must produce evidence of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001). Whether a duty exists is a threshold question of law; liability cannot be imposed if no duty exists. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006).

A daywork drilling contract covered the operations on Rig No. 488 at the time of the accident. In the contract, "Patterson-UTI Drilling Co." was identified as the contractor, and Pure Resources, LP, was identified as the operator. The signature lines in the contract indicate that it was

5

accepted on January 6, 2003, by "Patterson-UTI Drilling Co., a limited partnership" as contractor, by the signature of Steve J. McCoy, as vice president of marketing.

Cullifer and McCoy both explained in their affidavits that the company names listed in the contract – "Patterson-UTI Drilling Co." and "Patterson-UTI Drilling Co., a limited partnership" – were mistakenly placed in the contract and did not correctly identify any entities that were in business in 2003. Cullifer stated the following facts in his affidavits: (1) that, in 2003, no entity named "Patterson-UTI Drilling Company," "Patterson-UTI Drilling Co.," or "Patterson-UTI Drilling Co., a limited partnership" existed; (2) that, in 2003, a company named "Patterson-UTI Drilling Company LP, LLLP," which was a Delaware limited partnership, existed; (3) that Patterson-UTI Drilling Company LP, LLLP was the limited partner and 99% owner of Patterson West; (4) that Patterson-UTI Drilling Company LP, LLLP did not participate in the management or the day-to-day drilling operations of Patterson West; (5) that, at that time, "Patterson (GP2) LLC," which was a Delaware limited liability company, was the general partner and 1% owner of Patterson West; (6) that Patterson (GP2) LLC did not participate in the management or the day-to-day drilling operations of Patterson West; (7) that Patterson West owned, operated, and maintained Rig No. 488; and (8) that no other Patterson entity retained or exercised any control over the operation or maintenance of the rig or equipment being used on the rig.

McCoy stated the following facts in his affidavit: (1) that he accepted the contract on January 6, 2003; (2) that, at that time, he was employed by Patterson West and was not employed by, or an officer of, any other Patterson entity; (3) that, at the time he executed the contract, he knew the contract would be performed by Patterson West, using only its employees and equipment; (4) that he should have executed the contract as an authorized agent on behalf of Patterson West; (5) that the contract should have identified the contractor as Patterson West; and (6) that Patterson West performed the contract.

Cullifer's and McCoy's affidavits were sufficient to establish that the names "Patterson-UTI Drilling Co." and "Patterson-UTI Drilling Co., a limited partnership" were placed in the contract by mistake and that Patterson West owned, operated, and controlled Rig No. 488. There was no summary judgment evidence that any Patterson entity other than Patterson West actually controlled or had a right to control the operation of the rig.

6

Cullifer explained in detail in his affidavits the corporate structure of the Patterson entities. He stated the following facts, among others: (1) that, during the time period in question, Patterson Energy did not control the drilling operations of any Patterson entity; (2) that Patterson Energy did not own, operate, or maintain Rig No. 488; and (3) that Patterson Energy did not employ, supervise, or control any of the employees who worked for Patterson West on Rig No. 488. Cullifer explained that Patterson Energy owned a number of subsidiary Patterson entities and that Patterson Energy's subsidiaries "were maintained as separate entities, with the appropriate formalities." A flow chart showing Patterson's subsidiary structure, as of August 19, 2003, was attached as an exhibit to Cullifer's deposition. Cullifer's deposition testimony about the Patterson entities' corporate structure was consistent with the facts stated in his affidavits.

Cullifer's affidavits established that Patterson Energy was a separate legal entity from Patterson West and that Patterson Energy did not control or have a right to control the operations on Rig No. 488. Verner contends that the "corporate scheme" of the Patterson entities created a "sham." However, Cullifer stated that the Patterson entities in question were maintained as separate entities and followed the appropriate formalities. Verner did not present any summary judgment evidence to the contrary.

The summary judgment evidence established that Patterson Drilling and Patterson Energy did not owe a duty to Verner. The trial court did not err in granting a traditional summary judgment to Patterson Drilling and Patterson Energy. We overrule Verner's second and third issues.

*This Court's Ruling*

We affirm the judgment of the trial court.


TERRY McCALL

JUSTICE


October 9, 2008

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

7