**Deny and Opinion Filed February 4, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01388-CV

### PREMIER POOLS MANAGEMENT CORP. AND SHAN POOLS, INC. D/B/A PREMIER POOLS AND SPAS, Appellants
### V.
### PREMIER POOLS, INC., Appellee

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-07182**

## MEMORANDUM OPINION
Before Chief Justice Wright and Justices Lang-Miers and Stoddart
Opinion by Chief Justice Wright

Before the Court is the motion of Premier Pools Management Corp. (PPMC) and Shan Pools, Inc. d/b/a Premier Pools and Spas asking this Court to reduce the supersedeas bond relating to the injunctive portion of the trial court's judgment.

Premier Pools, Inc. has been a pool builder in the north Texas area for over twenty years. PPMC licenses the name "Premier Pools & Spas" on a nationwide basis and provides consolidated marketing and support for its licensees. In 2011, Shan Pools became one of PPMC's licensees and began operating a pool construction business under the name Premier Pools and Spas. Premier Pools sued for trademark infringement and unfair competition seeking both monetary damages and injunctive relief.

In its judgment, the trial court awarded both monetary damages in excess of $450,000 and a permanent injunction. The injunctive portion requires PPMC and Shan Pools to immediately cease and desist certain practices including, using the name "Premier Pools" as part of any business name and using that name in advertising. The trial court also ordered PPMC to shut down the DFW page on their website and Shan Pools to notify all local governmental entities in the DFW area within ten days that it will no longer be using the name Premier Pools and Spas. In its judgment, the trial court set $205,000 as the amount of security to suspend enforcement of the permanent injunction. PPMC and Shan Pools filed a motion to decrease *only* the bond related to the permanent injunction.[1] The trial court denied their motion. They have now asked this Court to reduce the bond.

As a rule, a judgment debtor is entitled to supersede the judgment pending appeal, thereby suspending its enforcement. TEX. R. APP. P. 24.1(a) & (f). This is true if the judgment is a permanent injunction. *See Ex parte Kimbrough*, 135 Tex. 624, 146 S.W.2d 371, 372 (1941). When the judgment is for something other than money or an interest in real property, the trial court must set a bond that will adequately protect the judgment creditor against loss or damage that the appeal might cause. *See* TEX. R. APP. P. 24.2(a)(3). If an appellant moves to reduce the bond, the trial court must lower the amount of security after conducting a hearing if it finds that posting the security will cause the judgment debtor substantial economic harm. *See* TEX. R. APP. P. 24.2(b). On any party's motion, we may review the sufficiency or excessiveness of the amount of security and the trial court's exercise of discretion in setting the amount of security. *See* TEX. R. APP. P. 24.4. We review a trial court's determination of the amount of security for

---

[1] In the motion filed in the trial court, PPMC and Shan Pools stated that they "intend to supersede the monetary portion of the final judgment, including filing affidavits of net worth as permitted by Tex. R. App. P. 24 and a supersedeas bond or deposit in accordance with Rule 24. This motion is limited to addressing the supersedeas required for the permanent injunction contained in the Court's final judgment." In a footnote, they emphasized "[n]othing herein, or any evidence filed in support of this motion, should be construed as the filing of [their] net worth affidavit as permitted by Tex. R. App. P. 24.2(c) related to superseding the monetary judgment contained in the Court's final judgment."

an abuse of discretion. *See Imagine Automotive Group, Inc. v. Boardwalk Motor Cars, LLC*, 356 S.W.3d 716, 718 (Tex. App.—Dallas 2011, no pet.).

In determining whether to reduce the amount of the bond required to supersede an injunction, net worth is not a factor. The determining factor is whether posting the bond is likely to cause a party substantial economic harm. *See* TEX. R. APP. P. 24.2(b). Whether or not appellants are likely to suffer substantial economic harm is a question of fact that we review for abuse of discretion. *Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.,* 171 S.W.3d 905, 918 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Factors to consider in assessing whether posting a bond will result in substantial economic harm include: (1) the cost of obtaining the bond; (2) the availability of sufficient assets to cover that cost; (3) the availability of other sources from which the judgment debtor could secure funds to obtain the bond; (4) the judgment debtor's ability to borrow the funds; (5) the impact on the judgment debtor arising from the sale of assets sufficient to obtain the bond; and (6) the likelihood that selling assets to obtain the bond will result in the insolvency of the judgment debtor. *See id.* at 917.

Testimony from interested witnesses may establish a fact as a matter of law only if the testimony could readily be contradicted if untrue, and is clear, direct, and positive, and there are no circumstances tending to discredit it. *See Lofton v. Tex. Brine Corp.*, 777 S.W.2d 384, 386 (Tex. 1989). Clear, direct, uncontroverted evidence will be taken as true as a matter of law when such evidence is reasonable and credible and where the opposing party had the means and opportunity to disprove the testimony but failed to do so. *See Smith v. Patrick W.Y. Tam Trust,* 296 S.W.3d 545, 547-48 (Tex.2009) (citing *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 882 (Tex.1990)). The fact finder has the authority to make reasonable inferences from the evidence. *See Lee Lewis Const., Inc. v. Harrison*, 64 S.W.3d 1, 6 (Tex. App.—Amarillo 1999), aff'd, 70 S.W.3d 778 (Tex. 2001).

On November 4, 2014, the trial court conducted a hearing on the motion to reduce the supersedeas bond. At the hearing, PPMC and Shan Pools offered the affidavits of Paul Porter, CEO of PPMC, and Shan Johnson, President of Shan Pools. No witnesses testified at the hearing. PPMC and Shan Pools argue that, because the only evidence presented at the hearing established that they would suffer substantial economic harm if required to post the $205,000 bond, the trial court's contrary finding constituted an abuse of discretion.

In his declaration, Porter stated that he and his wife are the owners of PPMC. He stated that since the trial of this case in September, many of its licensees have stopped paying license fees or slowed payment of those fees. He stated that "PPMC will not be able to secure a supersedeas bond for any amount . . . because it does not have collateral to post to secure a bond and collateral is required." Porter does not state that PPMC made any attempt to secure a bond nor does he state what the cost would be to secure the bond or if there are sufficient assets to cover *that* cost. Porter merely concluded that PPMC would not be able to post a bond in the full amount of $205,000. He also stated that he could not sell any assets to raise money for the bond because the assets are needed to operate the business. Porter declared that "any amount above $25,000 for all supersedeas cash deposits (money judgment and injunction) will cause substantial economic harm to PPMC." Attached to his declaration was a Balance Sheet, Accounts/Receivables Aging Summary, and Profit & Loss Statement. Porter stated that, as reflected on its balance sheet, PPMC has a negative net worth of $344,794.71.

In his declaration, Johnson states the net worth of Shan Pools is $20,577. He stated Shan Pools does not have any assets to sell because they are needed to run the business. Like Porter, Johnson stated that Shan Pools cannot obtain a bond because "it does not have collateral to post to secure a bond and collateral is required." Also like Porter, Johnson does not state that he made any attempt to obtain a bond or what the cost would be to secure the bond. The only

–4–

document attached to Johnson's declaration is one page from Shan Pools's 2013 tax return. He calls it a balance sheet that "reflects that Shan Pools' net worth at the end of 2013 was $29,900."

At the conclusion of the hearing, the trial court found that PPMC and Shan Pools "failed to demonstrate that either the enforcement of the injunction or the posting of the required $205,000 supersedeas deposit would cause substantial economic harm" to either of them. In making this finding, the court noted that PPMC made shareholder distributions in the amount of $285,767.43 for a period of less than ten months of 2014. Further, the trial court noted the total income for the first ten months of 2014 exceeded $2 million and that during that time PPMC paid $21,448.19 in auto expenses, $571,021.47 on an incentive trip, an excess of $200,000 in officer compensation, and $189,999.99 in contributions made to a defined benefit plan. The trial court also found no basis to support Porter's statement that many of its licensees have stopped paying their fees since the trial. Based on these facts, the trial court found that "the balance sheet significantly understates the true net worth and profitability of [PPMC] and that the income statement in fact demonstrates the contrary, and any suggestion that not being able to continue collecting royalties from Shan Pools is going to cause a substantial disruption in [PPMC's] business is unsupported."

As for Shan Pools, the trial court noted that Shan Johnson's declaration failed to address what the impact of the enforcement of the injunction would be on Shan Pools because the injunction does not prohibit it from continuing to sell and build pools. It simply has to change the name under which it does business. The trial court recognized that there would be some costs involved in changing the name but there was no evidence as to what those costs would be. The trial court also noted that the license agreement between PPMC and Shan Pools requires PPMC to indemnify Shan Pools against any liability.

PPMC and Shan Pools contend that the trial court focused on the wrong inquiry. Instead of focusing on whether posting the bond would cause appellants substantial economic harm, they argue, the trial court focused on the consequences to them if they were required to abide by the injunction. We disagree. The trial court questioned some of the statements in the declarations such as why enforcement of the injunction would cause licensees to stop paying their royalties. PPMC also complains about the trial court's assumption that $285,767.43 in shareholder distributions was for the first ten months of 2014. In the motion, PPMC contends the "Equity section" of the balance sheet "reflects all entries in that accounting category from inception to the date of the balance sheet." They contend there is no evidence to support the trial court's inference that $285,767.43 was distributed to the Porters, PPMC's only shareholders, during the first ten months of 2014. The balance sheet says "As of October 26, 2014." We conclude it was reasonable for the trial court to infer that this amount was distributed during January 1, 2014 - October 26, 2014. PPMC and Shan Pools did not put on any witness so there was no opportunity for cross-examination. Their evidence could not be readily controverted because a party cannot cross-examine a declarant who is not present. *See CEBI Metal Sanayi Ve Ticaret A.S. v. Garcia*, 108 S.W.3d 464, 465 (Tex. App.—Houston [14th Dist.] 2003, no pet.)

In its response, Premier Pools contends the trial court properly determined that PPMC has considerable financial assets and that most of those assets have been distributed to PPMC's only two shareholders. It notes that PPMC and Shan Pools presented no witnesses for cross-examination and no documentation certified by an outside expert. Premier Pools attached to its response filed with the trial court, an article from a 2013 issue of Aqua Magazine in which Porter stated that his company posted over $120 million in sales in 2013. As to Shan Pools, the license agreement with PPMC provides that PPMC will bear the entire financial burden of the judgment. Premier Pools attached the license agreement to its response.

The trial court's findings reveal that it questioned the credibility of the statements in the documents offered to show the alleged negative net worth of PPMC. PPMC and Shan Pools failed to provide evidence on all the factors in support of showing posting the bond will cause them to suffer substantial economic harm. Particularly, there was no evidence as to the cost to obtain a bond much less that they even made an attempt to obtain a bond. Under these circumstances, we conclude the trial court did not abuse its discretion in finding that PPMC and Shan Pools would not suffer substantial economic harm by posting the bond. *See McCullough v. Scarbrough, Medlin & Assoc.*, 362 S.W.3d 847, 850 (Tex. App.—Dallas 2012, no pet.) (no abuse of discretion where evidence showed access to necessary funds from retirement accounts, only one attempt to borrow necessary funds, and selling an asset to pay costs of appeal). The trial court found and set forth why it found that PPMC had understated its true net worth. That finding supports the conclusion that posting the bond will not cause substantial economic harm. Posting that bond will suspend enforcement of the injunction for both PPMC and Shan Pools.

We deny the motion to decrease the supersedeas bond and, pursuant to this Court's order dated November 12, 2014, the stay is lifted.


141388F.P05

/Carolyn Wright/
CAROLYN WRIGHT
CHIEF JUSTICE