

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00407-CV

**IN RE WILLIAMS BROTHERS CONSTRUCTION CO., INC.**

Original Proceeding[1]

PER CURIAM

Sitting:      Rebeca C. Martinez, Chief Justice
                Lori I. Valenzuela, Justice
                H. Todd McCray, Justice

Delivered and Filed: November 26, 2025

PETITION FOR WRIT OF MANDAMUS GRANTED

On June 26, 2025, relator, Williams Brothers Construction Co., Inc., filed this petition for writ of mandamus requesting the issuance of an order directing respondent to withdraw or vacate her "Order on Plaintiffs' Motion for Net Worth Discovery" dated June 16, 2025 (hereinafter "Order"). The Order directs relator to (1) provide evidence of its net worth through the deposition testimony of a corporate representative, including the value of its total assets and all active contracts with the Texas Department of Transportation ("TXDOT") and (2) produce its 2022 and 2023 tax returns within 14 days of the date of the Order. This court issued a stay of the Order on

---

[1]This proceeding arises out of Cause No. 2024-CI-01176, styled *Larrie Ferdinand and Johanne Ferdinand, Individually and as Next Friend of I.F., Minor, as Heirs to the Estate of Justin Ferdinand, Deceased v. Williams Brothers Construction Co., Inc. and Reynaldo Barrera*, pending in the 438th Judicial District Court, Bexar County, Texas, the Honorable Antonia Arteaga presiding.

June 30, 2025, and authorized the real parties in interest and respondent to submit any response to the petition. The real parties in interest filed a response and the relator has replied. For the reasons set forth more fully below, we conditionally grant the petition in part and deny the petition in part.

## I.      BACKGROUND

This is a wrongful death action filed by Larrie and Johanne Ferdinand, individually, and as next of friend to I.F., a minor as heirs to the estate of Justin Ferdinand ("Ferdinand"). Ferdinand died early in the morning on July 10, 2024, when the car he was driving struck a crane boom that had entered into active traffic along the access road adjacent to the Loop 1604/IH-10 interchange in Bexar County. Williams Brothers Construction Co. is a highway construction contractor that was tasked with performing and supervising the road work at the location for the Texas Department of Transportation.

That morning, relator's crew attempted to reposition a crane adjacent to the access road as part of the interchange project. Relator's crew, directed by the foreman on duty, sought to swing the approximately 80-foot boom towards an open roadway instead of disassembling it, which would not have required the closure of any lanes of traffic. The foreman testified that he measured the boom and determined that it would not extend past the far-left lane of the access road. However, discrepancies exist in his testimony suggesting that he may have determined that the boom would enter the second from the left lane and instructed a sub-contractor to close that lane as well. Ultimately, the foreman admitted that he made "no effort" to verify that the second from the left lane was closed before proceeding with the crane's movement. The boom entered into the open lane and was struck by Ferdinand, who died from his injuries.

The real parties in interest filed a motion for net worth discovery seeking copies of the relator's 2022 and 2023 tax returns. Relator filed an opposition and the real parties in interest

replied. An evidentiary hearing was held on June 13, 2025, to determine whether the real parties in interest had demonstrated a substantial likelihood of success on the merits of their exemplary damages claims against relator. Both parties introduced evidence at the evidentiary hearing.

The real parties in interest introduced the testimony and sworn statements of relator's assigned foreman, which they contend include conflicting and mutually exclusive statements demonstrating that he was aware of and exhibited a conscious indifference to the extreme risk presented by repositioning the crane boom in the manner utilized that day. The real parties in interest also introduced deposition excerpts from a vice principal that was not present at the time of the collision that ratifies the methods of the day. The real parties in interest entered into evidence relator's corporate safety policies that they alleged were breached. The real parties in interest contend that this evidence establishes that relator was aware of the extreme risk of repositioning the crane in the manner utilized and was consciously indifferent to it.

For its part, the relator contended that the foreman adopted a "very thoughtful approach" to the crane's repositioning that evidenced care, not conscious indifference towards public safety. Relator further asserted that the vice principal could not ratify the foreman's conduct after the fact. It introduced evidence regarding the extent of the foreman's authority to act on relator's behalf and bind it to his decisions. According to relator, there was nobody present at the job site that morning with sufficient authority for relator to be held liable for gross negligence. Relator also introduced evidence of third-party culpability, including that of the subcontractor who was allegedly responsible for closing the second from the left lane of traffic to facilitate the repositioning of the crane.

At the hearing, the real parties in interest moved the trial court to consider granting net worth discovery via corporate deposition in lieu of producing the tax records. The trial court issued

an order on June 16, 2025, finding that the real parties in interest had demonstrated a substantial likelihood of success on the merits on their claim for exemplary damages against relator and that the discovery requested constituted the least burdensome method available to determine relator's net worth. Respondent specifically ordered relator to provide corporate deposition testimony regarding its net worth, including the value of all active contracts with TXDOT, and to produce copies of its 2022 and 2023 tax returns.

Relator filed this petition for writ of mandamus challenging the June 16, 2025 order. Relator contends that respondent abused her discretion in issuing the order because a corporate defendant's net worth is not relevant to any issue of liability or actual damages. It is only relevant to a determination of exemplary damages. Relator contends that the real parties in interest cannot establish a substantial likelihood of success on the merits of their exemplary damages claim because they cannot establish that the corporation itself is liable for gross negligence. Relator further contends that respondent ordered the production of its tax returns without first establishing that any material information contained therein cannot be obtained from another source.

## II.    MANDAMUS STANDARD

Mandamus is both an extraordinary remedy and a discretionary one. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018). It is proper only to correct a clear abuse of discretion or the violation of a duty imposed by law, and there is no other adequate remedy at law. *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 207 (Tex. 2009) (orig. proceeding).

A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). We may not substitute our

judgment for that of the trial court in the resolution of factual matters unless the relator establishes that the trial court could have reasonably only reached one decision and that the trial court's decision is arbitrary and unreasonable. *In re Sanders*, 153 S.W.3d 54, 56 (Tex. 2004) (orig. proceeding); *Walker*, 827 S.W.2d at 839–40. In other words, we give deference to a trial court's factual determinations that are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). "A trial court's ruling that requires production beyond what our procedural rules permit is an abuse of discretion." *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding); *In re Berridge Mfg. Co.*, No. 04-20-00462-CV, 2020 WL 7365455, at *1 (Tex. App.—San Antonio Dec. 16, 2020, no pet.).

Relator must also establish that it has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004). This determination is neither "abstract or formulaic." *Id.* Rather, it requires a "practical and prudential" balancing of both public and private interests. *Id.* "It resists categorization." *Id.* A party lacks an adequate appellate remedy of a discovery error when a traditional appeal could not cure the error. *Walker*, 827 S.W.2d at 843. This may occur when the trial court orders the disclosure of privileged information, such as material protected by attorney-client privilege or trade secrets without adequate protections to maintain confidentiality. *Id.* It may also occur when a party is ordered to produce patently irrelevant or duplicative materials such that the discovery constitutes harassment. *Id.*; *see also In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding) ("Intrusive discovery measures…require, at a minimum, that the benefits of the discovery measure outweigh the burden imposed upon the discovered party.").

### III.   APPLICABLE LAW

####   a.   Net Worth Discovery

A party's net worth is not generally discoverable because it is not relevant to issues of fault or compensatory damage. TEX. R. CIV. P. 192.3 (discovery must be relevant and material to the subject matter of the pending action); *see Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex. 1998) (orig. proceeding) (discussing Texas's history of disallowing net worth discovery and elaborating on its relevance to determinations of punitive damages), *overruled on other grounds*, *Walker*, 827 S.W.2d at 842. It may become relevant when a party is potentially subject to exemplary damages. *See Lunford*, 746 S.W.2d at 473 ("A defendant's 'ability to pay' bears directly on the question of adequate punishment and deterrence."); *see also* TEX. CIV. PRAC. & REM. CODE § 41.001(5).

To this end, the legislature requires a party seeking evidence of a party's net worth to demonstrate "a substantial likelihood of success on the merits of a claim for exemplary damages." Tex. CIV. PRAC. & REM. CODE § 41.0115. Only upon such a showing after motion, notice, and a hearing, may a trial court authorize discovery of evidence of a defendant's net worth. *Id.* "A substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success. *In re Juniper Ventures of Tex., LLC*, 679 S.W.3d 177, 181 (Tex. App.—San Antonio 2023, orig. proceeding) (quoting *Bella Corp.*, 648 S.W.3d 373, 377 (Tex. App.—Tyler 2021, orig. proceeding). "Under our abuse of discretion standard, the question before us is whether there is some evidence from which the trial court could have reasonably concluded [real parties in interest] demonstrated a substantial likelihood of success on the merits of a claim for exemplary damages." *Id.*

### i.  Exemplary Damages

Exemplary damages may be awarded as a penalty or as punishment for a defendant's actions in limited circumstances. TEX. CIV. PRAC. & REM. CODE § 41.001(5). They are neither considered economic or noneconomic damages and are not awarded for compensatory purposes. *Id.* They may only be awarded if the claimant proves by clear and convincing evidence that the harm from which they seek recovery resulted from the fraud, malice, or gross negligence of the defendant. TEX. CIV. PRAC. & REM. CODE § 41.003(a). The real parties in interest have not asserted fraud or malice on the part of relator. Accordingly, they must establish gross negligence on the part of relator.

### ii.  Gross Negligence

"Gross negligence" means an act or omission: (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

There does not appear to be any dispute regarding the objective component. The parties contest only whether the requirements of the second, subjective component are met.

The second element of gross negligence requires a subjective consideration of the defendant's actions or inaction "examined prospectively from the perspective of the actor, not in hindsight." *Nino v. Primoris Energy Services Corp.*, No. 04-18-00758-CV, 2019 WL 2996969, at *3 (Tex. App.—San Antonio July 10, 2019, orig. proceeding) "[T]he plaintiff must show that the defendant knew about the peril, but [through] his acts or omissions demonstrate that he did not care." *Id.*; *see also U–Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 141 (Tex. 2012) ("[A] party

cannot be liable for gross negligence when it actually and subjectively believes that circumstances pose no risk to the injured party, even if [it is] wrong."). "Some evidence of simple negligence is not evidence of gross negligence." *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). "Conversely, some evidence of care does not defeat a gross-negligence finding." *Id.*

When the defendant is an entity, the plaintiff must establish that there is sufficient evidence to impute conscious indifference to the entity itself. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998) ("Because a corporation can act only through agents of some character, this Court has developed tests for distinguishing between acts that are solely attributable to agents or employees and acts that are directly attributable to the corporation.") (internal quotations and citations omitted).

"A corporation is liable for punitive damages if it authorizes or ratifies an agent's gross negligence or if it is grossly negligent in hiring an unfit agent." *Id.* A corporation may also be liable if it commits gross negligence through the actions or inactions of a vice principal. *Id.* at 922; *see also Lee Lewis Const., Inc.*, 70 S.W.3d at 786 (failure to properly supervise and provide proper safety equipment sufficient to satisfy the subjective element of gross negligence). Vice principals include corporate officers, those with the authority to employ, direct, and discharge the servants of the master, those engaged in the performance of nondelegable or absolute duties of the master, and those to whom the master has confided the management of the whole, a department, or a division of the business. *Id.* In determining whether to attribute conduct directly to the corporation, courts will examine all surrounding facts and circumstances. *Id.*

"Circumstantial evidence is sufficient to prove either element of gross negligence." *Mobil Oil Corp.*, 968 S.W.2d at 921; *see also Richard v. Wiatt*, No. 14-22-00236-CV, 2023 WL 3071161, at *3 (Tex. App.—Houston [14th Dist.] Apr. 25, 2023, no pet.) ("Although circumstantial evidence

may suffice to prove either element of gross negligence, the evidence must do more than create a mere surmise or suspicion of its existence.") (internal quotation marks omitted); *Miller v. Mullen*, 531 S.W.3d 771, 779 (Tex. App.—Texarkana 2016, no pet.). "Evidence of gross negligence is legally sufficient if, considered as a whole in the light most favorable to the prevailing party, it rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Lee Lewis Const., Inc.*, 70 S.W.3d at 785.

### b. Discovery of Tax Records

Information contained in income tax returns is discoverable if it is relevant, material, and not duplicative. *See Hall v. Lawlis*, 907 S.W.2d 493, 494 (Tex. 1995) ("Income tax returns are discoverable to the extent they are relevant and material to the issues presented in the lawsuit."); *Maresca v. Marks*, 362 S.W.2d 299, 301 (Tex. 1962). When a trial court authorizes net worth discovery, it may only authorize the least burdensome method available to obtain the net worth evidence. TEX. CIV. PRAC. & REM. CODE at § 41.0115(b). The information therein ceases to be material or relevant when it may be obtained through less intrusive discovery. *In re Brewer Leasing, Inc.*, 255 S.W.3d 708, 715 (Tex. App.—Houston [1st Dist.] 2008, orig. proceeding) (ordering production of tax returns was a clear abuse of discretion because the tax returns would be unnecessarily duplicative of other documents produced to show net worth); *Sears, Roebuck & Co. v. Ramirez*, 824 S.W.2d 558, 559 (Tex. 1992) (same); *Hall*, 907 S.W.2d at 495 (finding an abuse of discretion "by ordering production of [tax] returns without a showing of relevance"); *In re Zhang*, No. 01-22-00856-CV, 2023 WL 3956860, at *5 (Tex. App.—Houston [1st Dist.] June 13, 2023, orig. proceeding) ("The requesting party must also show that sufficient information of financial status cannot be obtained elsewhere.").

Tax returns may contain private information that is neither material nor relevant to the action in which they are sought. *See Maresca*, 362 S.W.2d at 300. Constitutional privacy concerns have resulted in a "reluctance to allow uncontrolled and unnecessary discovery of federal income tax returns." *Hall*, 907 S.W.2d at 495 (quoting *Sears, Roebuck & Co.,* 824 S.W.2d at 559); *see also In re Brewer Leasing, Inc.*, 255 S.W.3d at 714 ("[T]ax returns are treated differently from other discovery requests of financial matters [] because federal income tax returns are considered private and the protection of that privacy is determined to be of constitutional importance."). The compelled disclosure of tax returns may not be remedied by appeal "[b]ecause privacy once broken…cannot be retrieved." *Id.* (quoting *Maresca*, 362 S.W.2d at 301) (internal quotation marks omitted); *Zhang*, No. 01-22-00856-CV, 2023 WL 3956860, at *5.

## IV. APPLICATION

### a. The trial court abused its discretion in ordering the production of relator's 2022 and 2023 tax returns.

Respondent ordered both the production of the 2022 and 2023 tax returns in addition to the deposition of relator's corporate representative regarding its net worth. In ordering both, it becomes clear that respondent did not consider whether the production of tax records was the least burdensome method available to obtain evidence of relator's net worth. The deposition of relator's corporate representative may prove more than adequate to establish relator's net worth. Moreover, the real parties in interest failed to establish why the 2022 returns would be relevant. *See In re Jacobs*, 300 S.W.3d 35, 45 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) ("[W]e do not believe the trial court sufficiently narrowed the scope of production because only the relators' current net worth is relevant."). Absent such a showing, it was an abuse of discretion for respondent to order their production. *In re Brewer Leasing, Inc.*, 255 S.W.3d 708, 715 (Tex. App.—Houston

[1st Dist.] 2008, orig. proceeding); *Sears, Roebuck & Co*, 824 S.W.2d at 559; *Hall*, 907 S.W.2d at 495.

**b. Relator has not established that the trial court abused its discretion by ordering net worth discovery.[2]**

Relator contends that the foreman responsible for repositioning the crane demonstrated a "very thoughtful approach" and, regardless of this approach, the foreman did not possess sufficient authority for his actions to be imputed to it. Relator goes so far as to contend that no one with sufficient authority was present for the repositioning of the crane to hold it liable for gross negligence. When considered as a whole and viewed in the light most favorable to the real parties in interest, fair-minded and reasonable people could find that relator's failure to supervise or have present a person with sufficient authority to supervise could rise to the level of gross negligence. Relator has not established that it was an abuse of discretion to order the corporate deposition of a representative regarding relator's net worth.

## V.    CONCLUSION

We conclude that the trial court abused its discretion by requiring the relator to produce its 2022 and 2023 tax returns. We further conclude that relator did not establish that the trial court abused its discretion by ordering the relator to submit to a corporate deposition on its net worth. Therefore, we conditionally grant the petition for writ of mandamus in part. Respondent is directed to vacate that part of its June 16, 2025 ruling requiring relator to produce its 2022 and 2023 tax returns. The petition for writ of mandamus is otherwise denied. The writ will issue only in the unlikely event that the trial court fails to comply with our directive.

PER CURIAM

---

[2] Relator has not specifically contested that part of the order requiring disclosure regarding relator's contracts with the Texas Department of Transportation. Therefore, we consider only whether the trial court abused its discretion by ordering net worth discovery.